HARBOR CITY DISCOUNT AUTO CENTER, INC., et al.,
Cross-complainants and Respondents, v.
FIRESTONE TIRE & RUBBER COMPANY,
Cross-defendant and Appellant.

**COUNSEL**

Iverson, Yoakum, Papiano & Hatch, Patrick McAdam and Arnold D. Larson for Cross-defendant and Appellant.

Stephen J. Grogan, Robert E. Long, Dryden, Harrington & Swartz, Peter Abrahams, Hagenbaugh & Murphy, John J. Tary and James B. Sanborn for Cross-complainants and Respondents.

888

## OPINION

**KAUS, P. J.**—This appeal involves the financial detritus from an accident on July 8, 1972, in El Paso, Texas in which a new Ford station wagon was involved. The original complaint for personal injuries and wrongful death, filed in 1973, named as defendants Ford Motor Company (Ford), Harbor City Discount Auto Center (Harbor), Firestone Tire and Rubber Company (Firestone), as well as Elizabeth Williams, the driver of the car.[1]

The complaint alleged that the accident happened because the right rear tire of the station wagon blew out, making the steering mechanism inoperative and causing the car to lose control; it was also alleged that the car was negligently designed, manufactured and assembled in that the tires "and/or" the steering mechanism were defective. Harbor was alleged to have been negligent in failing to discover these defects upon inspection. Other causes of action of the original complaint sounded in warranty, express and implied, and "strict" products liability.

Ford and Harbor filed cross-complaints for indemnity against Firestone. Harbor also cross-complained against Beverly Hills Ford (Beverly Hills) which had allegedly "wholesaled" the car to Harbor. Beverly Hills, in turn, cross-complained against Firestone and Ford. By stipulation the cross-complaints were tried to the court without a jury after the basic liability trial on plaintiffs' complaint.

Shortly before that trial the plaintiffs answered interrogatories. One answer neatly sums up their factual contentions concerning the station wagon:

"Defendant FORD MOTOR COMPANY mounted a defective tire on the vehicle. Defendant FORD MOTOR COMPANY mounted the wrong type of tire on said vehicle. Defendant FORD MOTOR COMPANY punctured the bead of the tire in the process of mounting it. Defendant FORD MOTOR COMPANY manufactured a station wagon with space for occupants up to eight (8) adults and put in a roof rack to hold extensive luggage, yet the car was incapable of coping with such load. Defendant FORD MOTOR COMPANY did not issue adequate warnings with respect to the loading of the car. Defendant FORD MOTOR COMPANY manufactured defective seat

---

[1] The driver, Elizabeth Williams, filed a cross-complaint and in effect became an additional plaintiff.

belts. Defendant FORD MOTOR COMPANY manufactured a defective car with a defective steering wheel, which had to be repaired many times even when the car was brand new."

A good part of the extensive pretrial discovery conducted by counsel related to the claim that the station wagon had a defective steering mechanism. That claim was maintained by plaintiffs well into the trial. Counsel mentioned it in a trial brief, as well as in his opening statement. At least two of his witnesses gave it factual support.

Eventually the jury determined by special verdicts that the sole cause of the accident was the defective tire and that it was defective when it left the possession of Firestone, Ford and Harbor. No special verdicts concerning any other defect were submitted, nor was the jury asked to pass on the negligence of any party to this appeal. The briefs do not explain how these other issues fell by the wayside.

Firestone settled with all the plaintiffs except the driver Williams. The cross-complaints were then tried and resulted in judgments for indemnity in favor of Ford, Harbor and Beverly Hills and against Firestone. The judgments included substantial amounts for attorneys' fees incurred by Ford and Harbor in defending the main action and by Beverly Hills in defending itself against Harbor's cross-complaint.[2]

## DISCUSSION

■ The only issue on appeal relates to the propriety of the award of attorney's fees. The basic premise of the judgment on the cross-complaint—that ultimately Firestone is responsible for the accident and must indemnify Ford et al.,—is not questioned.

Since, as will appear, we disagree with the trial court, it is only fair to state that it acted long before the filing of the determinative Supreme Court decision—*Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1 [148 Cal.Rptr. 419, 582 P.2d 1010]—and that it was, fleetingly, vindicated by the Court of Appeal decision in that case, filed several months after the judgment appealed from.[3]

[2]Ford: $33,731.19; Harbor: $10,409.71; Beverly Hills: $14,348.00.

[3]*Davis* was still pending in the Supreme Court when the parties started to brief this appeal. With misplaced confidence Beverly Hills' original brief suggested that we "await the decision in *Davis* . . . [which] should be dispositive of the issue in the instant case." After *Davis* was filed, Beverly Hills filed a supplemental brief distinguishing it.

*Davis*, essentially, had to chose between two statutes which are in irreconcileable conflict where the tort of one party causes another to incur a liability for attorney's fees. On the one hand, section 3333 of the Civil Code states uncompromisingly that the measure of damages "[f]or the breach of an obligation not arising from contract . . . is the amount which will compensate for all the detriment proximately caused thereby. . . ." On the other hand, section 1021 of the Code of Civil Procedure announces with equal inflexibility: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties; . . ." Where a defect for which a manufacturer is responsible has exposed a retailer to expensive litigation by an ultimate consumer, these two sections are on a collision course: while attorney's fees are clearly proximately caused by the defect and should be recoverable under section 3333, section 1021 negatives such recovery in the absence of contract.

*Davis* was the aftermath of a products liability action concerning a portable elevator, brought against Davis, the retailer and Air Technical, the manufacturer. A jury found both defendants strictly liable after charges of negligence had been withdrawn. In a separate trial on a cross-complaint for indemnity, the court awarded Davis $19,804.77 in attorney's fees.

The Supreme Court noted that certain limited exceptions to section 1021 had been recognized, but found that none applied. It rejected what it called a "broad new exception" which would have authorized attorney's fees for former defendants who prevailed on claims for implied indemnity, at least where such fees are incurred "solely in defense of [the indemnitee's] own alleged wrongdoing. . . ." (*Id.*, p. 5.) It left open the possibility that such fees might be recoverable in cases where the indemnitee was only constructively liable " 'because of the actual default of another *for whose benefit the defense [was] really conducted . . . .* ' " *(C. & O. C. Co.* v. *County Comm'rs.* (1881) 57 Md. 201, 226, italics added by Supreme Court.)[4] *Davis,* however, was not such a case but "a products liability action of the garden variety. A manufacturer and retailer were

---

[4]There is some doubt just what kind of a case the Supreme Court had in mind when it cited *C. & O. C. Co.,* v. *County Comm'rs, supra,* and its progenitor *Westfield* v. *Mayo* (1877) 122 Mass. 100, 105. The indemnitee's position in both cases resembles the constructive liability of the plaintiff in *City & County of S. F.* v. *Ho Sing* (1958) 51 Cal.2d 127, 130 [330 P.2d 802].

held strictly liable for injuries caused by the manufacturer's defectively designed product." (*Id.,* p. 7.) The court felt that if in such a "wholly unexceptional case" attorneys fees were allowed, the legislative mandate of section 1021 would be "completely undermined."

*Davis* could easily have gone the other way. In *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 621 [30 Cal.Rptr. 821, 381 P.2d 645], the court had had no trouble at all explaining that section 1021 of the Code of Civil Procedure was "not applicable to cases where a defendant has wrongfully made it necessary for a plaintiff to sue a third person." In support the court had cited section 914 of the Restatement of Torts which applies whether the party seeking attorney's fees is wrongfully forced to defend or to sue.[5] Had the *Davis* court wanted to impose liability for attorney's fees on indemnitor/manufacturers, the language of *Prentice* would certainly have provided an adequate starting point. It chose, however, to confine *Prentice* to its facts and to make *Davis* the occasion for a reaffirmance of the rule that, absent "exceptional circumstances," section 1021 means just what it says and litigants are liable for their own attorney's fees.

The first post-*Davis* brief filed with us is Ford's. It attempts to distinguish *Davis* mainly on the ground that there the two defendants were at each other's throats while, in comparison, Firestone, Ford and the dealers were one big happy family, with no defendant seeking to avoid liability by blaming the other. In fact, Ford's own expert testified to the lack of a defect in the tire.[6]

While the record does indeed suggest that the trial strategy of the two principal defendants—Firestone and Ford—was not to throw rocks at each other, the plain fact remains that Ford's attorney's fees were

---

[5] The substance of section 914 of the original Restatement of Torts is retained in section 914, subdivision (2) of the Restatement Second of Torts, and reads as follows: "(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

[6] There should be no need to state the obvious: Since Ford was clearly liable for any defect in Firestone's tire, proof that the tire was not defective benefited Ford. Ford did, of course, produce other evidence tending to negative its liability on other theories, such as the alleged defective steering mechanism.

incurred solely in defense of Ford's own alleged wrongdoing.[7] That, in defending Ford, its counsel thought it expedient not to knock the work or product of any other defendant, makes no difference.

Recognizing that *Davis* may preclude it from recovering its entire fee, Ford suggests a legal compromise: that it recover only fees incurred in defending "on behalf of Firestone," but be made to absorb fees necessitated by plaintiff's various theories directed against Ford only, such as the steering mechanism charge. It bases its argument on *Hales* v. *Monroe* (8th Cir. 1976) 544 F.2d 331, a case in which the court, without citation of authority, made an "equitable adjustment" and disallowed the indemnitees' attorney's fees to the extent that they "asserted separate defenses which became an integral part of their preparation and trial and for which the manufacturer [indemnitor] could not be responsible."[8] (*Id.,* at p. 332.) Ford claims that a similar adjustment would comply with the spirit of the doctrine of comparative equitable indemnity as announced in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-598 [146 Cal.Rptr. 182, 578 P.2d 899]. (See also *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 327-332 [146 Cal.Rptr. 550, 579 P.2d 441].)

We have several problems with this suggestion which, at first blush, seems quite reasonable. *First*: the very assumption that Ford incurred legal expenses in "defending on behalf of Firestone" amounts to a rejection of *Davis*. It is a point which can be made in every "garden variety" products liability case by every seller down the line who defends himself by attempting to show that there was no defect in the product he sold. The fact that here there were other legal issues which triggered additional legal efforts does not change the nature of the legal services in the area where Ford's and Firestone's interests coincided. *Second*: Granted that the doctrine of comparative equitable indemnity announced.

---

[7] Any suggestion that "wrongdoing" means "negligence" and does not encompass strict liability for defective products is negatived by the Supreme Court's observation, quoted above, that *Davis* was "a products liability action of the garden variety. A manufacturer and retailer were held *strictly liable* for injuries caused by the manufacturer's defectively designed product." (*Davis,* p. 7; italics added.)

[8] At the oral argument one of respondents drew our attention to a statement in *Peters* v. *Lyons* (Iowa 1969) 168 N.W.2d 759, 770, that the measure "of recoverability of attorney fees [is] to be based [not] on the charges made by the injured party [but] on the facts as found by the court or jury." That may be good Iowa law but is definitely not in tune with *Davis* where the Supreme Court repeatedly speaks of the "alleged" wrongdoing of the party seeking reimbursement for legal expenses.

in *American Motorcycle* is a sound step away from the "all or nothing" rule which it replaced, it is nevertheless a doctrine of substantive law and has no logical impact on the *Davis* rule that litigants are responsible for legal costs incurred in vindicating substantive rights, in whatever area of the law. *Third*: the question of the correct portion is, itself a litigable issue. In the *Hales* case the court dispensed some "barnyard equity" and made the indemnitees absorb 50 percent of their attorney's fees. In this case Ford suggests that an award of two-thirds—in other words, a reduction of the judgment to about $22,500—would be equitable, but its very argument in favor of such an award demonstrates that adoption of the *Hales* rule would simply add one more area for prolix, time-consuming hearings to the already jammed dockets of our trial courts. Concern for judicial economy may well have been one of the subliminal reasons why our Supreme Court in *Davis* so rigorously adhered to the American rule that basically each litigant is responsible for his own legal expenses.

There remains for discussion the judgment in favor of Beverly Hills, the dealership which, it will be recalled, "wholesaled" the station wagon to Harbor.[9] After originally predicting that *Davis,* when filed, "should be dispositive," (see fn. 3, *ante*) Beverly Hills now asserts that it is not adversely affected by *Davis* because that case has nothing to do with legal expenses incurred in defending a claim of strict liability. This surprising proposition is based on this stray sentence in the opening paragraph of the *Davis* opinion: "The sole issue before this court is the correctness of the trial court's order that Air Technical pay the attorney's fees incurred by Davis in defending against allegations of his own *negligence* and *breach of warranty.*" (*Id.,* p. 3, italics added.) Beverly Hills then goes on to argue that since it was never sued on any theory except strict liability,[10] *Davis* does not affect it.

The truth is, of course, that the quoted language from *Davis*' opening paragraph does not really describe the holding of the court. The liability case in *Davis* went to trial on three theories: negligence, breach of warranty and strict liability. After the plaintiff had suffered a nonsuit on the breach of warranty cause of action, he voluntarily abandoned the

---

[9]Harbor settled with Firestone while the appeal was pending in this court.

[10]Query whether that is so. The original plaintiffs had sued Harbor on every possible theory, including negligence and breach of warranty. Harbor's cross-complaint in effect passes the blame for all of the plaintiffs' complaints to the cross-defendants, that is Beverly Hills, Ford and Firestone.

negligence theory. (*Id.*, p. 4.) The jury verdict was, therefore, based on strict liability. Obviously, the legal fees which were disallowed in toto covered, at least in part, Davis' defense of a charge of strict liability. The fact is that when the Supreme Court, in *Davis*, gets around to its ultimate holding—the twice-quoted "garden variety" paragraph (*id.*, p. 7)—it speaks of nothing but strict liability.

Beverly Hills is, of course, in a peculiar position in that out of all the parties before us it apparently had the least opportunity to spot or remedy any of the defects complained of. As noted, the original plaintiffs did not even name it as a defendant. Yet, as a wholesaler Beverly Hills was liable to its vendee and was, in turn, entitled to indemnity from its vendor. (*Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 251-254 [71 Cal.Rptr. 306]; *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 52-53 [46 Cal.Rptr. 552]; see also *Pearson Ford Co.* v. *Ford Motor Co.* (1969) 273 Cal.App.2d 269, 271-273 [78 Cal.Rptr. 279].) Given that a business strictly liable for an unsafe product is a "wrongdoer," we think it would be impossible to distinguish *Davis* on the degree of involvement —or noninvolvement—of a particular entity in the chain of distribution. Beverly Hills is, therefore, as responsible for its legal expenses as any other California litigant.

Reversed.

Stephens, J., and Hastings, J., concurred.