[Civ. No. 63839. Second Dist., Div. Five. Mar. 16, 1983.]

UMET TRUST, Plaintiff, Cross-defendant and Appellant, v.
SANTA MONICA MEDICAL INVESTMENT COMPANY et al.,
Defendants, Cross-complainants and Appellants;
SONNENBLICK-GOLDMAN OF CALIFORNIA, INC.,
Cross-defendant and Appellant.

**COUNSEL**

Beardsley, Hufstedler & Kemble for Plaintiff, Cross-defendant and Appellant.

Fierstein & Sturman, Harvey Fierstein and Edward C. Broffman for Defendants, Cross-complainants and Appellants.

Troy, Malin, Pottinger & Casden, D. W. Hunt and David J. Wohlberg for Cross-defendant and Appellant.

## OPINION

**EAGLESON, J.**[*]—Although there are cross-appeals, the primary issue in this case is whether the court should apply the general rule that ordinarily a litigant must bear his own attorney's fees (Code Civ. Proc., § 1021) or allow attorney's fees to appellant under the "exceptional circumstances" doctrine articulated in California by the Supreme Court in *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645]. The trial court disallowed counsel's fees.

### FACTS

Santa Monica Medical Investment Company, a limited partnership, Wesco Services Center, a corporation, Dr. Jorgensen and Mrs. Jorgensen, hereinafter collectively called appellant or SMMI, owned land and a commercial building thereon. In August 1973 SMMI needed additional funding for the maintenance of the land and building and engaged Sonnenblick-Goldman of California, Inc., hereinafter respondent or S-G, as its broker to secure financing. SMMI contacted UMET, the original plaintiff in the trial court, as a source of funds. UMET agreed to advance the money to SMMI documented in the form of a sale-leaseback, as distinguished from a conventional loan, transaction in form and substance as follows:

1. SMMI sold the land, but not the building, to plaintiff UMET for $500,000.

2. SMMI retained title to the building.

3. SMMI contemporaneously leased back the land from UMET for a 35-year period at a rental rate of $5,000 per month (a 12 percent yield per year to UMET on its $500,000 advance).

4. By the term of the lease SMMI was granted a repurchase option respecting the land at any time after seven years.

In 1975 SMMI breached the lease by failing to make certain rent payment obligations. On July 31, 1975, UMET terminated the lease and purported to

[*]Assigned by the Chairperson of the Judicial Counsel.

unilaterally take possession of the land and the building. On August 3, 1975, UMET served a three-day notice to pay rent on SMMI. Negotiations to resolve the differences between UMET and SMMI failed and UMET filed a suit against SMMI on December 30, 1975, seeking declaratory relief, quiet title, damages and an injunction. SMMI answered and cross-complained against UMET requesting damages for usury, reformation of the transaction from a land sale leaseback to a loan transaction, eviction, trespass, interference with use and possession of property, mismanagement, waste and conversion and injunctive relief.

In July 1977, SMMI sought and was granted leave to file a first amended cross-complaint against S-G, realleging the allegations of the cross-complaint filed against UMET and adding counts for breach of contract and breach of fiduciary duty. Issues were joined and trial ensued.

The trial court found as follows:

1. SMMI is now and at all times had been the owner of the land and the building.

2. The "transactions documents" that evidenced the sale and leaseback of land are reformed in the aggregate to evidence a $500,000 loan from UMET to SMMI.

3. The "Grant Deed" and the "Lease and Security Agreement" are reformed so that said documents collectively are declared to constitute an equitable mortgage from SMMI as mortgagor to UMET as mortgagee securing the loan from UMET to SMMI.

The court further found that respondent S-G, in its capacity as a mortgage broker, committed numerous breaches of fiduciary duty to appellant, but that appellant SMMI was entitled to nominal damages only against S-G in the sum of $1. All matters have been resolved except the cross-appeals of SMMI and S-G against each other.

## DISCUSSION

We will discuss first the appeal of SMMI who contends it is entitled to general damages against respondent S-G including but not limited to attorney's fees[1] incurred incident to its successful efforts in the trial court under the "exceptional circumstance" doctrine articulated in the *Prentice* case.

---

[1] SMMI's brief refers to "General Damages." The argument and case citations dwell on the issue of attorney fees.

In *Prentice,* plaintiffs agreed to sell certain land to the Hortons, to accept the Hortons' deed of trust for most of the purchase price, and subordinate their interest to any loan the Hortons might make for the purpose of constructing an apartment building on the land.

The Hortons obtained a loan from Neal and gave their note in the amount of the loan, secured by a first deed of trust on the property.

Defendant acted as escrow holder and closed the transaction pursuant to written instructions from the parties.

Upon completion of the sale the Hortons had title to the land, subject to the first deed of trust in favor of Neal and a second deed of trust in favor of plaintiffs for the balance due on the purchase price.

The Hortons did not use the proceeds of the loan from Neal to construct an apartment house, but devoted the money to other purposes, later filing a petition in bankruptcy.

Plaintiffs then brought an action against the Hortons, Neal and defendant.

Plaintiffs' complaint contained various counts against defendants Horton and Neal, and the trial court granted relief against these defendants by a decree quieting plaintiffs' title against their claim.

The counts against defendant escrow company were based purely on the ground of negligence. The trial court found that the escrow company had been negligent in closing the sale and awarded plaintiffs as damages the amount of attorney's fees incurred by them in the prosecution of the counts in the complaint against the defendants Horton and Neal.

The Supreme Court stated at page 620: "In the absence of some special agreement, statutory provision, or exceptional circumstances, attorney's fees are to be paid by the party employing the attorney. (Code Civ. Proc., § 1021.) [Citations.]

"*Exception*: A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred. [Citations.]"

It was urged that this exception was not applicable because of the provisions of section 1021 of the Code of Civil Procedure. That section provided: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement of the parties . . . ." The Supreme Court commented at pages 620-621: "This section undoubtedly prohibits the allowance of attorney fees against a defendant in an ordinary two-party lawsuit. [Citations.] Section 1021 is merely a statement of the general rule. [Citation.]

"The section is not applicable to cases where a defendant has wrongfully made it necessary for a plaintiff to sue a third person. . . ."

As applied in specific factual settings, the cases cited in *Prentice* as controlling all involved intentional torts. *Prentice* itself extended the doctrine to matters sounding in negligence. However, in *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 7 [148 Cal.Rptr. 419, 582 P.2d 1010], the Supreme Court held: "*Prentice* limits its authorization of fee shifting to cases involving 'exceptional circumstances.' "

What is an exceptional circumstance? The only case in which a definitional effort was made to address the subject is *Trails Trucking, Inc.* v. *Bendix-Westinghouse etc. Air Brake Co.* (1973) 32 Cal.App.3d 519, 524 [108 Cal. Rptr. 30], where the court said: "The general rule of nonallowability in attorney's fees and of other similar unrecoverable general expenses is one of long-standing. . . .

"This general rule has been in existence, partially statutory and partially court made, and has served us during many generations. In *Prentice* . . . and the cases upon which it is based and which have followed it, courts have allowed such fees and expenses when exceptional circumstances have been found to exist. Such exceptional circumstances have been the result of weighing by courts of policy considerations—when the factors in favor of allowance, rather than any hard fast rule, have dictated the justice of the allowance of such damages—on a case-by-case basis."

*Davis, Trails,* and *Harbor City Discount Auto Center, Inc.* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 886 [157 Cal.Rptr. 438] hold that a party may not recover attorney's fees incurred in defending itself against its own wrongdoing.

In the case at bench, plaintiff UMET sued SMMI for money. Although SMMI was successful on its cross-complaint in causing the sale-leaseback transaction to be reformed to a loan, SMMI was found to be obligated to

UMET in the sum of $1,684,529, all due and payable. This aggregate sum included $325,000 on missed monthly payments with interest thereon, together with interest on certain advances that UMET had made to SMMI. The main point is that as to the loans and other items, SMMI was in default and under the authority of these cases, above, cannot assert a claim for reimbursement for that portion of counsel fees incurred in the unsuccessful defense of its litigation with UMET.

The exceptional circumstances doctrine is not applied in cases where the party seeking reimbursement for counsel fees is not *compelled* or *required* to bring or defend an action against the third person. (*Prentice, supra.*)

In the case at bench the trial court found: "The parties to the transaction, i.e., UMET [plaintiff and] SMMI . . . , each intended that the transaction be a loan in substance; each of the parties knew that the transaction, in form, was a sale leaseback"; and in other findings referred to the transaction as a "disguised loan." The substantive claim of SMMI in its cross-complaint against plaintiff UMET was to reform its contract with plaintiff. The belated cross-complaint against S-G for damages for breach of fiduciary duty added nothing to the thrust of SMMI's earlier cross-complaint against UMET for reformation and it was not necessary or required that UMET be sued because of S-G's wrongdoing in respect of the sale leaseback transaction.

Finally, at bottom, the claim of exceptional circumstances was to some measurable degree the product of the voluntary conduct of SMMI who should not be allowed counsel fees for extrication from an unsatisfactory business transaction which it helped create. As the trial court noted in a memorandum of decision on September 22, 1980: "The court finds that . . . (Dr.) Jorgensen knew precisely what he was contracted to do and combined with the plaintiffs (i.e., UMET) and cross-defendants (i.e., S-G) to accomplish his purpose of obtaining the funds he required. [H]e was therefore as much at fault in creating the necessity to bring the lawsuit as any other party. Attorney fees denied."

The trial court found that UMET was entitled to recover the interest for which it bargained even though the interest was usurious at the time the disguised loan was made; that said loan was not exempt from the operation of the usury laws then governing such transaction; and that the enactment of Proposition 2 in 1979 (Cal. Const., art. XV, § 1) (increasing the rate of interest that lawfully could be charged on real estate loans) was to be retroactively applied both as to penalty and remedy, thus validating an otherwise usurious transac-

tion. The trial court noted that Dr. Jorgensen, for and on behalf of SMMI, knew the difference between a sale leaseback and a loan transaction, but in order to generate funds sorely needed by SMMI, voluntarily entered into the transaction. He also admitted at trial that he always believed that the sale leaseback was a gimmick.

In *Harbor City Discount Auto Center, Inc.* v. *Firestone Tire & Rubber Co., supra,* 95 Cal.App.3d 886, at page 891 [157 Cal.Rptr. 438], the court noted: "Had the *Davis* court wanted to impose liability for attorney's fees . . . the language of *Prentice* would certainly have provided an adequate starting point. It chose, however, to confine *Prentice* to its facts and to make *Davis* the occasion for a reaffirmance of the rule that, absent 'exceptional circumstances,' section 1021 means just what it says and litigants are liable for their own attorney's fees."

*Davis,* at page 7, recites: "If applied so broadly, the judicial exception [exceptional circumstance doctrine] would eventually swallow the legislative rule that each party must pay for its own attorney."

With the congeries of factual circumstances we have described, and mindful of the admonitions of *Harbor* and *Davis,* we hold that a claimant who incurs counsel fees and other general damages in defending himself (herein unsuccessfully) against a third party for alleged wrongdoing in an action for breach of contract, who was not compelled or required to institute a claim against the third party to protect its own interests because of the wrongdoing of another, and whose conduct in the first instance engendered the primary lawsuit in respect of which the general damages and counsel fees were incurred, is not entitled to reimbursement under the exceptional circumstances doctrine.

CROSS-APPEAL OF S-G

We briefly address the issues raised by S-G on the cross-appeal, all of which we find are without merit.

S-G first asserts it did not owe a fiduciary duty to SMMI. *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [157 Cal.Rptr. 392, 598 P.2d 45], is dispositive on this point. "A mortgage loan broker is customarily retained by a borrower to act as the *borrower's agent* in negotiating an acceptable loan. All persons engaged in this business in California are required to obtain real estate licenses. [Citations.] Thus, general principles of agency [citation] combine with statutory duties created by the Real Estate Law [citation] to impose upon mortgage loan brokers an obligation to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost

good faith toward their principals. 'The law imposes on a real estate agent "the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary." [Citations.] . . . .' A real estate licensee is 'charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision.' "

■ It is conceded that S-G was retained as a mortgage loan broker to assist in securing a loan for SMMI, here originally disguised as a sale-leaseback. General principles of agency and statutory duties peculiar to mortgage loan brokers created a fiduciary relationship between S-G as broker and SMMI as principal and borrower extending at least to the time of the funding of the loan.

S-G further asserts if there was a fiduciary duty owed to SMMI it was not breached. The evidence is overwhelmingly to the contrary. The trial court found that S-G failed to advise its clients that their interest in the property, as lessee, could be terminated upon abbreviated notice; failed to advise its clients that the statutory right of redemption existing in loan agreements does not exist in sale leaseback transactions; failed to disclose that the antideficiency provisions which statutorily exist in traditional loans secured by interests in real property do not exist in sale-leaseback transactions; and failed to advise SMMI that the final transaction documents contained provisions which could be interpreted as granting to plaintiff an immediate future interest in the building. S-G further affirmatively misrepresented that the sale leaseback financing gave SMMI the same flexibility as a conventional loan, and would accomplish the same result.

S-G asserts that its tortious conduct, if any, was not a proximate cause of SMMI's transactional difficulties, contending that the retention by SMMI of a separate attorney who assisted in the closing of the "loan transaction" is somehow a superseding cause. But S-G's duty as broker extended to at least the date of the closing and was not terminated by retention of separate counsel.

We do not know for sure what SMMI would have done if S-G had fulfilled its fiduciary responsibility of revealing all material facts above enumerated. So long as the conduct of S-G remained a proximate cause, legal responsibility is fixed even though the trial court ultimately concluded that this was essentially a case of liability without damage. There is ample support in the record for the trial court's findings.

■ Finally, S-G contends that this action is barred by the three-year statute of limitations set by section 338, subdivision 4 of the Code of Civil Procedure. The underlying transaction and the facts of S-G's breach of fiduciary duty were evident in 1973. SMMI's damage, and discovery of the pitfalls of the land sale

leaseback transaction, did not occur until July 1975 when plaintiff UMET purported to terminate SMMI's lease and declare a forfeiture of SMMI's ownership of the medical building.

"The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence [citation]. Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. Prosser states the proposition succinctly. 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.'" (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200-201 [98 Cal.Rptr. 849, 491 P.2d 433].)

In the case at bench the potential for the infliction of appreciable, actionable harm became manifest at the time plaintiff UMET filed its action on December 30, 1975. SMMI's cause of action against S-G did not fully mature until this time. SMMI's cross-complaint was filed on the July 29, 1977, well within the three-year period.

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied April 6, 1983, and the petition of defendants, cross-complainants and appellants for a hearing by the Supreme Court was denied May 25, 1983.