[S.F. No. 24569. Jan. 30, 1984.]

JOHN GRAY, Plaintiff and Respondent, v.
DON MILLER & ASSOCIATES, INC., Defendant and Appellant.

COUNSEL

Hoge, Fenton, Jones & Appel, Michael D. McSweeney and John M. Beede for Defendant and Appellant.

John D. Rogers and Rogers & Stevens for Plaintiff and Respondent.

OPINION

MOSK, J.—We granted a hearing in this case in order to resolve a conflict in the decisions of the Courts of Appeal on whether a party who obtains a

judgment against a fiduciary for fraud is entitled to recover attorney fees as an element of the damages incurred. *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 30 [147 Cal.Rptr. 655], held that the victim of the fraud is entitled to such damages, while *Pederson* v. *Kennedy* (1982) 128 Cal.App.3d 976, 980 [180 Cal.Rptr. 740], decided the contrary.

Plaintiff, the owner of a landscape contracting business, made an offer in writing in May 1978 to purchase a parcel of land on which he intended to build a residence and to expand his business by the addition of a nursery. The offer was made through Fitch, a licensed real estate salesman employed by defendant corporation, which conducts a real estate brokerage business. In June, Fitch telephoned plaintiff and told him that the offer had been accepted by the sellers and that escrow would close in 30 days if all went well, and later in the summer he told plaintiff's wife that she could begin preparations to move to the property. From time to time during the remainder of 1978, Fitch and plaintiff discussed problems regarding the property. Fitch told plaintiff that the close of escrow would be delayed until after the first of January 1979 because the sellers might have "income tax problems" if the property was transferred before the end of the year. Plaintiff, in reliance on Fitch's representations, incurred various expenditures in planning for the move. In January 1979, plaintiff was informed by Fitch that the seller had decided not to sell the property.

The following month, plaintiff filed an action against the sellers and defendant, seeking specific performance of the "contract of sale," and damages for fraud. The trial court found Fitch had falsely represented that plaintiff's offer had been accepted by the sellers without reasonable grounds to believe the statement to be true, that plaintiff reasonably relied on the misrepresentation, and that defendant, as Fitch's employer, had violated its fiduciary duty by breaching its obligation to act honestly and deal fairly. The representation was found to have been negligently made. ██ The court awarded plaintiff damages in the amounts he had expended in anticipation of completing the purchase, and compensation for the time he and his partner spent in planning use of the site;[1] plaintiff was also afforded $14,796 in "delay damages," representing the increase in the cost of constructing the residence and nursery buildings planned for the site during the six-month period which elapsed between Fitch's misrepresentation and the time plaintiff learned it was false; finally, plaintiff was awarded $7,250 in attorney fees in partial reliance on the rationale of *Walters* v.

---

[1] These damages consisted of $120 for a loan fee paid by plaintiff to finance purchase of the property, $395 for plans for structures on the property, $137.50 for the value of a fence built by plaintiff for use on the site, and $1,500 for the hours spent by plaintiff and his partner in planning the layout of the site.

*Marler, supra,* 83 Cal.App.3d 1.[2] The court denied recovery against the sellers, finding that they had never accepted the offer, and that they had not entered into a contract to sell the property.

■ On this appeal from the ensuing judgment defendant argues, first, that the evidence was insufficient to justify the trial court's finding that Fitch had represented to plaintiff that the sellers had accepted the offer. The evidence on this issue was in conflict: plaintiff testified that such a representation had been made, while Fitch testified to the contrary. In resolving this conflict in plaintiff's favor, the trial court relied on a number of factors, including the circumstances that plaintiff had expended funds in reliance on the representation, and that Fitch had stated at one point in his testimony that he could not recall telling plaintiff either that his offer had been accepted, or that it had not. ■ While defendant points to evidence and possible inferences therefrom which would support its claim that Fitch's testimony should have been accepted by the trial court, we are bound by the rule that when "a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231].) It certainly cannot be said here that there was no substantial evidence to support the trial court's finding in plaintiff's favor on this issue.

The same rule applies to defendant's challenge to the trial court conclusion that plaintiff justifiably relied on Fitch's representation. ■ Whether reliance is justified is a question of fact for the determination of the trial court; the issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience. (*Feckenscher* v. *Gamble* (1938) 12 Cal.2d 482, 496-497 [85 P.2d 885]; *Winn* v. *McCulloch Corp.* (1976) 60 Cal.App.3d 663, 671 [131 Cal.Rptr. 597].) In the present case, although there was evidence that plain-

---

[2]Although the trial court relied only in part on *Walters* as justification for the attorney fees awarded to plaintiff, the parties discuss only the *Walters* rationale on this appeal. In fact, the court also cited a provision in the offer made by plaintiff as justification for awarding attorney fees. That provision states: "In the event legal action is instituted by any party to this agreement to enforce the terms of this agreement, or arising out of the execution of this agreement or the sale, the prevailing party shall be entitled to receive from the other party a reasonable attorneys fee. . . ." The court concluded that the offer constituted an "agency agreement" between plaintiff and defendant, and that the cause of action for fraud arose out of this "agency agreement." This conclusion was clearly erroneous, as the consent to pay attorney fees applied only to an agreement between the parties to the sale. Since the offer was not accepted, no such agreement came into being. On appeal, plaintiff does not rely on this contractual provision in support of the award of attorney fees.

tiff had some experience in purchasing real estate, he never dealt through a broker previously, and there is nothing to indicate he could not reasonably have relied on Fitch's representation that the offer had been accepted. We cannot say, therefore, that the trial court erred in concluding plaintiff reasonably relied on the representation of Fitch, a licensed salesman, who stood in a fiduciary relationship to plaintiff in the transaction.

■ Next, we consider the damages awarded by the trial court resulting from defendant's misrepresentation. Plaintiff did not prove that defendant's conduct resulted in lost profits, nor did he assert that he was entitled to damages because comparable property would have cost more than the parcel in issue. However, he did claim, and the trial court granted, $14,796 in "delay damages," for the increased cost of construction of the buildings planned for the site during the six-month period between June 1978, when the misrepresentation was made by Fitch, and January 1979, when plaintiff learned that the sellers refused to sell the property.

We reverse the award of "delay damages" because plaintiff suffered no damages resulting from the delay. Plaintiff has so conceded on this appeal. He was entitled only to the "actual losses suffered because of the misrepresentation." (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 490 [275 P.2d 15]; Civ. Code, § 3333.) His inability to begin construction on the property was not caused by Fitch's misrepresentation, but by the sellers' refusal to accept his offer of sale.

■ However, plaintiff is entitled to damages in the amounts he spent in anticipation of completing the purchase and for his own time in planning the business on the site. (See fn. 1, *ante,* p. 502.) Although defendant asserts that these expenditures were "imprudent" and that the county would not have approved of the establishment of a nursery business on the property, the trial court's conclusion in plaintiff's favor is binding on us. While conflicting inferences may be drawn from the testimony, there was substantial evidence to support the court's determination that plaintiff had a reasonable expectation he would obtain the property and would receive permission to conduct his nursery business thereon.

■ We come, then, to the question whether the trial court was correct in awarding attorney fees to plaintiff. Under the American rule, as a general proposition each party must pay his own attorney fees. This concept is embodied in section 1021 of the Code of Civil Procedure,[3] which provides that each party is to bear his own attorney fees unless a statute or the agreement of the parties provides otherwise.

---

[3]All references in this opinion are to the Code of Civil Procedure, unless otherwise noted.

Several exceptions to this general rule have been created by the courts. Three of these exceptions, discussed at length in *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 34-47 [141 Cal.Rptr. 315, 569 P.2d 1303], base recovery of attorney fees to the prevailing party on the fact that the litigation has conferred benefits on others. Thus, if the litigation has succeeded in creating or preserving a common fund for the benefit of a number of persons, the plaintiff may be awarded attorney fees out of that fund. (*Estate of Stauffer* (1939) 53 Cal.2d 124, 131-132 [346 P.2d 748].) Likewise, if a judgment confers a substantial benefit on a defendant, such as in a corporate derivative action, the defendant may be required to pay the attorney fees incurred by the plaintiff. (See e.g., *Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 323-325 [72 Cal.Rptr. 146].) Finally, under the "private attorney general" concept attorney fees may be awarded to those who by litigation secure benefits for a broad class of persons by effectuating a strong public policy. (*Serrano* v. *Priest, supra,* 20 Cal.3d 25, 42-47.)

A fourth established exception, sometimes referred to as the "tort of another" or "third party tort" exception, allows a plaintiff attorney fees if he is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant. (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645].) This rule is embodied in the Restatement of Torts and is generally followed in the United States. (Rest.2d Torts, § 914, subd. (2), and appen.)

All these exceptions were created by the courts pursuant to their inherent equitable powers, although statutory authorization for the award of fees has followed in some cases, such as recent statutes which recognize the "private attorney general" doctrine. (§ 1021.5.)

 Two issues with respect to the propriety of the award of attorney fees to plaintiff are involved in the present case: first, whether in keeping with *Walters* he should recover such fees because defendant, a fiduciary, committed a fraud against him and second, whether the fourth established exception described above, the "tort of another" exception, is applicable under the circumstances of this case.

In *Walters,* a jury awarded damages against a real estate broker and a realty company for misrepresentation. The trial court's award of attorney fees to the plaintiff was upheld on the ground that "where a defending party stands in a fiduciary relationship to the victim of a fraud, the damages must be measured pursuant to the broad provisions of Civil Code section 3333." That provision governs torts in general and provides that the measure of damages for the breach of an obligation not arising from contract "is the

amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." The court concluded that since the plaintiff would not have incurred attorney fees if the defendants had not made their misrepresentations, he was entitled to compensation for such fees "under Civil Code section 3333," citing *Overgaard* v. *Johnson* (1977) 68 Cal.App.3d 821, 828 [137 Cal.Rptr. 412]. (83 Cal.App.3d at p. 30.)

The holding of *Walters* is not altogether clear. It can be interpreted to mean that attorney fees are recoverable for all torts under section 3333 of the Civil Code because it would always be true that the plaintiff would not have incurred attorney fees if the defendant had not committed a wrong against him. As so construed, the holding of *Walters* would render meaningless, in all tort actions, the provisions of section 1021 that each party is responsible for his attorney fees absent a statutory or contractual provision to the contrary. It would also be contrary to a consistent line of cases decided since 1872, when section 3333 of the Civil Code was enacted, which, with the exceptions noted above, deny attorney fees to the prevailing party in an action for tort. (See e.g., *Howell* v. *Scoggins* (1874) 48 Cal.355, 356-358; *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 636-640 [150 Cal.Rptr. 461, 586 P.2d 942].)

On the other hand, it is possible to interpret the language in *Walters* as holding that attorney fees are a proper element of damage in a tort action only when the defendant is a fiduciary who has acted fraudulently toward the plaintiff. However, we have found no cases which follow the *Walters* rationale as so construed.[4]

*Pederson* v. *Kennedy, supra,* 128 Cal.App.3d 976, is directly contrary to *Walters*. There, as in *Walters* and the present case, a real estate broker was found guilty of fraud. The trial court's award of attorney fees to the plaintiff was reversed on the ground that section 1021 precluded the award.

The opinion in *Walters* expresses no rationale for creating an exception to the general American rule regarding the award of attorney fees. The exceptions discussed above were created to allocate the financial burden of litigation in an equitable manner, and the "common fund," "substantial benefit" and "private attorney general" exceptions serve an important public policy objective by providing individuals with an incentive to initiate litigation which benefits a larger group. (*Bauguess* v. *Paine, supra,* 22

---

[4]*Walters* cites *Overgaard* v. *Johnson, supra,* 68 Cal.App.3d 821, 828, as the sole authority in support of its holding. However, as was correctly observed in *Pederson* v. *Kennedy, supra,* 128 Cal.App.3d 976, *Overgaard* involved the "tort of another" exception to the general rule denying attorney fees to the prevailing party.

Cal.3d 626, 636.) None of these reasons apply to the circumstances considered in this case. The fact that the wrongdoing was committed by a fiduciary does not provide a sufficient reason for the exception; surely, if the award of attorney fees depended on the nature of the wrong, fees in tort actions would be awarded on a case-by-case basis, a result clearly prohibited by section 1021. Moreover, in both the present case and in *Walters,* the fiduciary's misconduct was more negligent than intentional. In *Bauguess* we declined to create an exception to the general rule and denied an award of attorney fees as a sanction for a party's misconduct.

This court commented in *Bauguess* that we have "moved cautiously in expanding the nonstatutory bases on which awards of attorney's fees may be predicated." (22 Cal.3d 626 at p. 636.) We discern no justification for departing from the rule stated in section 1021, and decline to open a " 'Pandora's Box' of prolonged litigation" (*Trails Trucking, Inc.* v. *Bendix-Westinghouse etc. Air Brake Co.* (1973) 32 Cal.App.3d 519, 524 [108 Cal.Rptr. 30]) by upholding the conclusion in *Walters* that a plaintiff is entitled to recover attorney fees as an element of damages in actions for fraud in which the defendant is a fiduciary. The portion of *Walters* so holding is therefore disapproved.[5]

■ The next question is whether plaintiff is entitled to recover attorney fees on the basis of the "tort of another" exception to the general rule because he was required to protect his interest by bringing an action against the sellers as the result of Fitch's wrongdoing. We can see no escape from the validity of plaintiff's claim in this regard. If Fitch had not first falsely notified plaintiff that his offer had been accepted and several months later told him that the sellers declined to sell the property, plaintiff would not have incurred attorney fees in seeking to obtain the property in a suit for specific performance against the sellers. Thus, Fitch's misrepresentation was the direct cause of plaintiff's action for specific performance against the sellers.[6]

---

[5]There are cases which hold that an insured may recover attorney fees incurred in an attempt to enforce the terms of a policy after the insurer has denied coverage in violation of the covenant of good faith and fair dealing. (*Dinkins* v. *American National Ins. Co.* (1979) 92 Cal.App.3d 222, 234 [154 Cal.Rptr. 775]; *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358, 363-364 [118 Cal.Rptr. 581].) Other decisions have refused to allow recovery of attorney fees in this situation. (See, e.g., *Austero* v. *Washington National Ins. Co.* (1982) 132 Cal.App.3d 408, 411-416 [182 Cal.Rptr. 919].) We need not decide which of these conflicting lines of authority is correct. Even if we were to agree with the rule of *Dinkins* and *Mustachio* we would decline, for the reasons stated above, to extend their holdings to a noninsurance context and to hold, as plaintiff urges, that a defrauded plaintiff is entitled to attorney fees against a defendant solely because he stands in a fiduciary relationship to the plaintiff.

[6]The fact that the trial court ultimately found that the sellers had not accepted plaintiff's offer does not militate against this conclusion. At the time plaintiff filed his complaint in 1979, he was relying on Fitch's representation that the sellers had initially accepted his offer but later refused to consummate the sale.

We reject defendant's argument that plaintiff was not required to seek specific performance against the sellers, but that he voluntarily brought the action. The same could be said of every situation to which the "tort of another" exception applies, i.e., the wronged party could choose not to protect his interest by suing or defending the suit of a third party. Unless plaintiff was willing to waive what appeared at the time he filed suit against the sellers to be his right to buy the property, he was required to initiate action against them.

 Another contention of defendant is that the "tort of another" exception to the general rule does not apply because here there are no "exceptional circumstances" justifying application of the rule. (*Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 7 [148 Cal.Rptr. 419, 582 P.2d 1010].) *Davis* was a products liability case in which a defendant who paid for his own defense in the action and was found innocent of wrongdoing, sought attorney fees he had incurred from a codefendant who was found liable to the plaintiff, claiming that the "tort of another" exception to the general rule applied. A majority of this court held that the defendant was not entitled to reimbursement because he had incurred the fees in defending "exclusively against allegations of his own negligence," and the case did not involve "exceptional circumstances," but was a "products liability action of the garden variety." (22 Cal.3d 1, at pp. 6-7.)

While the rationale of *Davis* has been applied in products liability litigation to deny attorney fees to the innocent defendant against his wrongdoing codefendant (*Harbor City Discount Auto Center, Inc.* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 886, 889-894 [157 Cal.Rptr. 438]; *Trails Trucking, Inc.* v. *Bendix-Westinghouse etc. Air Brake Co.*, *supra*, 32 Cal.App.3d 519, 522-524), in a nonproducts liability context the rule of *Prentice* v. *North Amer. Title Guar. Corp.*, *supra*, 59 Cal.2d 618, 620-621, has been applied when it has been found that the party seeking attorney fees was required by the wrong of the defendant to protect his interests by bringing or defending an action against a third person. (See, e.g., *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 293-294 [175 Cal.Rptr. 767]; *Howard* v. *Schaniel* (1980) 113 Cal.App.3d 256, 267-268 [169 Cal.Rptr. 679]; *Manning* v. *Sifford* (1980) 111 Cal.App.3d 7, 10-12 [168 Cal.Rptr. 387]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 149-150 [135 Cal.Rptr. 802]; *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 112 [128 Cal.Rptr. 901]; *Vanguard Recording Society, Inc.* v. *Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 419 [100 Cal.Rptr. 826].) Some of these cases distinguish *Davis* on the ground that it involved products liability litigation (*Earp, Manning*) or view as the "exceptional circumstance" the fact that the plaintiff

was required by the wrongdoing of the defendant to file suit against a third party to vindicate his rights (*Howard*).

We note also that the "tort of another" exception as embodied in the Restatement of Torts does not contain an "exceptional circumstances" requirement (Rest.2d Torts, § 914, subd. (2)); we have been cited to no cases from the many jurisdictions which apply this exception limiting its applicability to "exceptional circumstances."

Defendant is correct in its final contention that plaintiff did not produce evidence as to the proportion of the $7,250 in attorney fees awarded which was attributable to the action for specific performance against the sellers. Since the trial court granted attorney fees based on the *Walters* rationale, such segregation was not requested by the court or offered by plaintiff. The trial court must determine on remand the portion of the $7,250 in attorney fees incurred by plaintiff which is attributable to his action against the sellers.

The judgment is reversed insofar as it grants $7,250 in attorney fees and $14,796 in "delay damages" to plaintiff. The trial court is directed to determine the proportion of the $7,250 in attorney fees awarded to plaintiff attributable to the action against the sellers, and to award to plaintiff the amount of such fees. In all other respects, the judgment is affirmed. Each party shall bear its own costs on appeal.

Bird, C. J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.