[No. A101382. First Dist., Div. Four. June 29, 2004.]

AOZORA BANK, LTD., Plaintiff and Respondent, v.
1333 NORTH CALIFORNIA BOULEVARD, Defendant and Appellant.

## COUNSEL

Robert T. Russell, Marcelle E. Mihaila and Amanda L. Groves for Defendant and Appellant.

Senn, Palumbo & Meulemans, Kevin J. Senn and Catherine S. Meulemans for Plaintiff and Respondent.

## OPINION

**KAY, P. J.**—The issue addressed in this appeal is whether a real estate lender can recover attorney's fees for prevailing in a bad faith waste action against the borrower where the loan documents provide that the borrower is liable only "if and to the extent that" it "commits . . . waste." We hold that the lender is not entitled to attorney's fees under this contractual language, and therefore reverse the order awarding fees in this case.

### I. BACKGROUND

Aozora Bank, Ltd., formerly known as The Nippon Credit Bank, Ltd., Los Angeles Agency (Bank) made a $73 million loan to 1333 North California Boulevard, a limited partnership (the Partnership) to refinance an initial loan and complete construction of the Partnership's commercial property. The Partnership defaulted on the loan, and a Bank subsidiary purchased the property for a $52 million credit bid in a trustee's sale under the deed of trust. Bank then filed this suit for damages for waste against the Partnership and its general and managing partners.

A jury found that the defendants committed waste by failing in bad faith to pay an installment of taxes on the property, and awarded Bank $394,713.56 in compensatory damages and $8,333,333.33 in punitive damages. The trial court remitted the amount of punitive damages to $1.6 million, Bank declined the remittitur, and both sides appealed. In the published portion of our opinion in the prior appeal (*Nippon Credit Bank v. 1333 North Cal. Boulevard* (2001) 86 Cal.App.4th 486 [103 Cal.Rptr.2d 421]), we upheld the compensatory damage award and affirmed Bank's entitlement to punitive damages for bad faith waste. In the unpublished portion, we upheld the remittitur of punitive damages and the order for new trial on the amount of punitive damages only.

After a second trial in which the jury awarded no punitive damages to Bank, Bank moved for an award of attorney's fees in the case. The court ordered that Bank receive attorney's fees of $1,434,212.20 from the Partnership, an amount that included a 1.5 multiplier for "the complex and cutting edge nature of the issues litigated."

## II. DISCUSSION

■ Parties generally bear their own attorney's fees in the absence of a statute or agreement that provides otherwise. (See Code Civ. Proc., § 1021; see also, e.g., *Trope v. Katz* (1995) 11 Cal.4th 274, 279 [45 Cal.Rptr.2d 241, 902 P.2d 259] [discussing other limited exceptions to the general rule].) Attorney's fees are not generally available to prevailing parties in tort actions (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 506 [198 Cal.Rptr. 551, 674 P.2d 253]), and Civil Code section 2929, which codifies the tort of waste committed here, simply states that "[no] person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security," without providing for recovery of attorney's fees. Since there is no statutory or other legal authority for an attorney fee award in this instance, Bank's entitlement to fees hinges entirely on the terms of the parties' contracts.

■ Bank argues that the Partnership is liable under the attorney fee provisions of the note and deed of trust for the fees Bank incurred in this waste action.[1]

---

[1] The note states: "If any attorney is engaged by Lender or if Lender incurs any costs, expenses or losses because of any default or to enforce or defend any provision of the Loan Documents, then Borrower shall pay upon demand the reasonable attorneys' fees and all costs, expenses and losses so incurred by Lender . . . ." The deed of trust states: "All reasonable expenses, costs and other liabilities, including attorney's fees, which Beneficiary may incur (i) in enforcing or defending this Deed of Trust (or its priority) or any of the other Loan Documents . . . or (iv) in the exercise by Beneficiary, subsequent to the occurrence of an Event

However, even if those provisions extended to the fees in question, the Partnership would not be liable for them unless such liability was excepted from the nonrecourse feature of the note and deed of trust. In a nonrecourse loan like the one here, the borrower has no personal liability and the lender's sole recourse is against the security for the obligation. (1 Cal. Real Estate Finance Practice: Strategies and Forms (Cont.Ed.Bar 2003) § 1.51, p. 26 (hereafter Real Estate Finance Practice).) Certain exceptions to the nonrecourse limitation are listed in the note and deed of trust. If those "carve-outs" of personal liability do not encompass the fees at issue, the fees are only recoverable from the collateral and the Partnership is not liable for them under the contracts.

The note and deed of trust provide that "notwithstanding any other provision of this [Note/Deed of Trust], no money judgment shall be sought against [Borrower/Trustor] for repayment of the indebtedness secured by [the/this] Deed of Trust or the discharge of any obligations secured by [the/this] Deed of Trust, either by means of a suit on [this/the] Note or by means of a suit for deficiency judgment following foreclosure of [the/this] Deed of Trust; provided, however [listing various exceptions], *nor shall such limitation of liability apply if and to the extent that [Borrower/Trustor]* . . . *commits fraud, material misrepresentation or waste.*" (Italics added.)

The trial court found the Partnership liable for attorney's fees "notwithstanding the nonrecourse provisions in the loan documents, which carve out an exception for waste." The court thus evidently determined that the italicized carve-out was broad enough to make the Partnership personally liable not only for waste damages, but also for the attorney's fees Bank incurred in prosecuting the waste action. Since no conflicting extrinsic evidence was introduced as to the meaning of the waste carve-out, the court's interpretation is subject to our de novo review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].) We conclude for a number of reasons that the carve-out does not extend to liability for attorney's fees.

■ We note first that the carve-out does not expressly refer to attorney's fees, and thus that fee liability was, at best, an implied term of the agreement.

---

of Default, of any rights or remedies granted by this Deed of Trust or any of the other Loan Documents shall be paid upon demand by Trustor to Beneficiary . . . ." The deed of trust includes a covenant against waste, and the following indemnity provision: "Trustor shall indemnify Beneficiary against, and shall hold it harmless from, all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses . . . which either may suffer or incur . . . (ii) in performance of any act required or permitted hereunder, under any of the other Loan Documents or by law, (iii) as a result of any failure of Trustor to perform any of Trustor's obligations . . . ."

A contract term will be implied only when "it is so obvious that the parties had no reason to state [it]." (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 473 [47 Cal.Rptr.2d 12].) It is not obvious that a carve-out for waste would include attorney's fees for a waste action because, as previously observed, fees are not generally awarded in such actions.

█ Moreover, whether "[t]he borrower is liable for the lender's attorney fees and costs incurred in enforcing nonrecourse carve-outs" is one of "[t]he key concerns of lender's counsel" in negotiations for real property financing. (Real Estate Finance Practice, *supra*, § 1.83, p. 47.) Given the importance of the issue, it is unlikely that the carve-out would be silent on attorney's fees if they were intended to be included.[2] This conclusion is supported by the only extrinsic evidence presented on the interpretation of the waste carve-out: the declaration of John C. Opperman, who had worked for 40 years in the real estate finance industry, served as president of the California Mortgage Bankers Association, and been involved in the underwriting of hundreds of limited-recourse commercial property loans. In his experience, carve-outs were "always expressèd, and never implied." In his opinion, "if the parties to the loan transaction intend that attorneys' fees will be an exception to a non-recourse provision, so that the borrower will have personal liability for such fees, then a specific reference to attorneys' fees should be made . . . in the carve-outs to the non-recourse provision." This opinion is credible given the recognized significance of the fee issue. (*Ibid.*)

█ We note further that the carve-out by its terms does not apply simply "if" the Partnership commits waste, but rather "if *and to the extent that*" waste is committed. (Italics added.) Bank's argument that the carve-out entirely negates the nonrecourse aspect of the agreement when waste is committed would be stronger without the italicized qualifier, which appears to limit the carve-out to the extent of the waste itself, i.e., waste damages. In construing a contract we are obliged, if possible, to give effect to all of its provisions (Civ. Code, § 1641; Code Civ. Proc., § 1858), and the words "to the extent that" would be mere surplusage under Bank's construction.

Therefore, the most reasonable reading of the agreement is that the waste carve-out does not implicitly include attorney's fees for prosecuting a waste action. As a consequence, recovery of those fees from the Partnership is

---

[2] Compare, e.g., the waste carve-out exemplar in Practicing Law Institute, Commercial Real Estate Financing: What Borrowers and Lenders Need to Know Now (1999) p. 815, which covers "all loss, cost (including [reasonable] attorneys' fees and expenses), expense, claim, liability or damage incurred by Mortgagee as a result of waste of the Mortgaged Premises, which [materially] reduces the value of the Premises." (Brackets and parentheses in original, presumably identifying points for negotiation.)

barred by the nonrecourse provisions of the note and deed of trust, and Bank's fee award must be reversed.[3]

Bank argues that the carve-out cannot properly be read to exclude attorney's fees because to do so would "void the very purpose" of the attorney fee provisions of the note and deed of trust, at least from its standpoint. Bank reasons that "[s]ince attorneys' fees would normally only be sought at the conclusion of a successful lawsuit, the nonrecourse interpretation would always prevent the prevailing lender from invoking the attorneys' fees clause to recover fees because of the nonrecourse nature of the loan. However, a prevailing borrower would be able to invoke the attorneys' fees clause against the lender." Such a result, Bank submits, would "violate the principle of Civil Code section 1717, which makes attorneys' fees clauses reciprocal."

Since the Partnership was not the prevailing party in this case, we need not decide whether, considering the reciprocity provided in Civil Code section 1717, the Partnership would have been entitled, as Bank assumes, to recover its attorney's fees under the note and deed of trust had it prevailed, even though it was insulated from fee liability by the nonrecourse provisions of those agreements. As for Bank's claim that it could never benefit from the fee provisions of the note and deed of trust if they were nonrecourse, this assertion overlooks Bank's ability to recover attorney's fees from the security, and thus to add those fees to the amount required to reinstate the loan after a default and to the amount of the credit bid at a foreclosure. If Bank wanted additional recourse against the Partnership personally it should have negotiated for an attorney fee carve-out in the loan documents.

Bank maintains that it is entitled to attorney's fees as well as waste damages under the reasoning of our prior opinion in the case, but there is no merit to that argument. The principal issue in the prior appeal was whether the Partnership's failure to pay property taxes could be found to have been bad faith waste of Bank's security. (*Nippon Credit Bank v. 1333 North Cal. Boulevard, supra,* 86 Cal.App.4th at pp. 493–499.) *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 604–605 [125 Cal.Rptr. 557, 542 P.2d 981], had held that recovery for waste was precluded following a nonjudicial foreclosure by the antideficiency protection of Code of Civil Procedure section 580d, unless the waste was committed in bad faith. Thus, our analysis was focused on whether the evidence in the first trial supported a bad faith finding. We relied in part on a commentary discussing when a borrower should be personally

---

[3] In view of this conclusion, it is unnecessary to decide whether the fee award after the nonjudicial foreclosure was a deficiency judgment prohibited by Code of Civil Procedure section 580d (see *Flynn v. Page* (1990) 218 Cal.App.3d 342, 348–349 [266 Cal.Rptr. 830]), or to address the parties' arguments as to the reach of the contractual fee provisions or the amount of fees awarded.

liable for waste in the context of a nonrecourse loan. (*Nippon Credit Bank v. 1333 North Cal. Boulevard, supra,* at pp. 495–498, citing Stein, *The Scope of the Borrower's Liability in a Nonrecourse Real Estate Loan* (1998) 55 Wash. & Lee L.Rev. 1207.) The article was pertinent because waste liability is generally "nonrecourse" under *Cornelison*'s interpretation of Code of Civil Procedure section 580d, regardless of how a loan is structured. We had no occasion in the prior appeal to consider the nonrecourse provisions of the loan here—they plainly include a carve-out for waste damages, and no issue was made of them. Bank emphasized in its prior briefing that it was suing in tort, not under the contract, and made no mention of the waste carve-out. Nor was any question of attorney's fees presented in the prior appeal. Our prior decision thus has no bearing on the present matter.

## III. DISPOSITION

The order awarding attorney's fees to Bank is reversed, with directions to enter an order denying Bank's fee motion. Costs on appeal to the Partnership.

Reardon, J., and Sepulveda, J., concurred.