Filed 6/10/21  Rincon EV Realty v. CP III Rincon Towers CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| RINCON EV REALTY LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CP III RINCON TOWERS, INC. et al., <br><br> Defendants and Respondents. | A155104, A155284 <br><br> (City & County of San Francisco Super. Ct. No. CGC-10-496887) |

After extensive trial and appellate court proceedings in this commercial real estate dispute, the trial court awarded the defendants prevailing-party attorney fees and costs totaling about $9.5 million.[1]  Plaintiffs appeal,

---

[1] The background of the parties' dispute and the resulting litigation (some of which we discuss further below) is set forth in this court's opinions addressing earlier appeals in this matter.  (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2017) 8 Cal.App.5th 1, 5–7 (*Rincon I*); *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (Nov. 28, 2017, A139933, A140036) [nonpub. opn.] (*Rincon II*); *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 991–993 (*Rincon III*).)  The plaintiffs are Rincon EV Realty LLC, Rincon ET Realty LLC, and Rincon Residential Towers LLC.  (*Rincon I, supra*, at p. 5.)  The defendants are (1) CP III Rincon Towers, Inc. (CP III), (2) other "Carmel Partners" entities (Carmel Partners, Inc.; Carmel Partners, LLC; Carmel Management, LLC; and Carmel Partners Investment Fund III, L.P.), (3) U.S. Bank National Association (USB) as trustee for the Maiden Lane Commercial Mortgage-Backed

1

contending (1) defendants are not entitled to any fees or costs, and (2) the amounts awarded are unreasonable. We affirm the award of attorney fees, but we reverse the award of statutory costs (about $300,000 of the total amount at issue) because defendants did not include those costs in a timely costs memorandum as required by the California Rules of Court.

## I. BACKGROUND

### A. *The Loan and the Foreclosure*

In June 2007, plaintiffs purchased Rincon Towers, a San Francisco apartment complex (the Property) for approximately $143 million. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 5.) Plaintiffs financed the purchase in part by borrowing $110 million from Bear Stearns Commercial Mortgage, Inc. (Bear Stearns). (*Ibid.*) The loan from Bear Stearns (the Loan) was evidenced by a promissory note and secured by a deed of trust on the Property. (*Ibid.*) The parties also executed a Loan Agreement and a Cash Management Agreement. (*Id.* at pp. 5, 7.)

After the collapse of Bear Stearns in 2008, the Maiden Lane Trust acquired the Loan. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 6.) In April 2010, defendant CP III acquired the Loan from the Maiden Lane Trust. (*Ibid.*) CP III initiated nonjudicial foreclosure proceedings in June 2010. (*Id.* at pp. 6–7.) At a foreclosure sale on October 12, 2010, CP III acquired the Property with a $73 million credit bid. (*Id.* at p. 7.)

---

Securities Trust 2008-1 (the Maiden Lane Trust), (4) the Maiden Lane Trust, and (5) Maiden Lane LLC. (*Id.* at pp. 6–7.) We will sometimes refer to plaintiffs collectively as Rincon or the borrower, and to defendants collectively as the lender.

**B.** *Plaintiffs' Lawsuit, the First Judgment, and the First Award of Fees and Costs*

In February 2010, plaintiffs filed the present lawsuit. Their efforts to enjoin the foreclosure were unsuccessful. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 7.) Plaintiffs' fifth amended complaint, the operative complaint at trial, included both legal claims (breach of contract, fraud, slander of title, trade secret misappropriation) and equitable claims (unfair competition, to set aside the foreclosure sale, and for an accounting). (See *id.* at pp. 5, 7.) Defendants did not file a counterclaim.

Following a bench trial, the trial court on April 3, 2013, entered judgment for defendants on all of plaintiffs' causes of action, including both the legal claims and the equitable claims (the first judgment or the 2013 judgment). (See *Rincon I*, *supra*, 8 Cal.App.5th at pp. 5, 7.) On April 18, 2013, defendants filed a motion for an award of approximately $11.5 million in prevailing-party attorney fees and costs, relying on provisions in the Loan Agreement and the Cash Management Agreement. (*Rincon II*, *supra*, A139933, A140036.) On the same date, defendants filed a memorandum of costs seeking an additional award of approximately $360,000 in statutory costs. (*Ibid.*) Plaintiffs opposed defendants' fee motion and filed a motion to strike or tax the costs claimed in defendants' memorandum of costs. (*Ibid.*)

On August 6, 2013, the court entered an order granting defendants' fee motion in large part and denying in part and granting in part plaintiffs' motion to tax costs. (*Rincon II*, *supra*, A139933, A140036.) On August 15, 2013, the court entered an amended order that revised some of the amounts in the August 6 order. (*Ibid.*) The court awarded defendants $10,392,705.25 in attorney fees and costs pursuant to their fee motion and $306,228.85 in statutory costs pursuant to their memorandum of costs (the first award of fees and costs). (*Ibid.*) Plaintiffs appealed both the first judgment

3

(No. A138463) and the first award of fees and costs (Nos. A139933, A140036). (*Rincon I*, *supra*, 8 Cal.App.5th at p. 5; *Rincon II*, *supra*, A139933, A140036.)

## C. *The Partial Reversal of the First Judgment*

On January 31, 2017, we affirmed in part and reversed in part the first judgment. (*Rincon I*, *supra*, 8 Cal.App.5th at pp. 5, 22.) We reversed the judgment as to plaintiffs' legal claims (based on the trial court's erroneous striking of plaintiffs' demand for a jury trial as to those claims); we affirmed the judgment as to plaintiffs' equitable claims. (*Ibid.*) We remanded for further proceedings as to the legal claims. (*Ibid.*)

## D. *The Second Judgment*

In June 2017, after the resolution of plaintiffs' appeal of the first judgment (but while plaintiffs' appeal of the first award of fees and costs was still pending), defendants moved for summary judgment as to the remanded legal claims. (*Rincon III*, *supra*, 43 Cal.App.5th at p. 992.) The trial court granted this motion in September 2017, and entered judgment in favor of defendants on all claims, both legal and equitable, on October 17, 2017. (*Id.* at pp. 992–993.)

On November 2, 2017, defendants filed a memorandum of costs that only listed a filing fee of $560 (apparently for the 2017 summary judgment motion). The memorandum did not list any costs claimed to have been incurred prior to the first judgment entered in 2013.

## E. *The Reversal of the First Award of Fees and Costs*

On November 28, 2017, we reversed the first award of fees and costs (which had been based on defendants' status as prevailing parties under the now-reversed first judgment) and remanded for further proceedings. (*Rincon II*, *supra*, A139933, A140036.) We concluded in part that "any prevailing-party determination must be based on the final resolution of all

4

claims, including those remanded to the trial court."[2]  (*Rincon II*, *supra*, A139933, A140036.)

## F. *The Second Fee Award*

On December 19, 2017, defendants filed a "Motion to Fix Amount of Awardable Attorneys' Fees and Costs" (the second fee motion).  In the second fee motion, defendants sought about $12.2 million in attorney fees and costs. The requested amount consisted of (1) attorney fees incurred both before and after the 2013 judgment, totaling about $11 million, and (2) costs totaling about $1.2 million that defendants argued were awardable under the contracts between the parties (although they were not awardable as statutory costs).[3]

_____

[2] Prior to oral argument in *Rincon II*, defendants informed this court by letter that (1) in September 2017 the trial court had granted defendants' motion for summary judgment on all claims, (2) defendants had submitted a proposed judgment, and (3) following its entry, defendants would file a motion for attorney fees and a memorandum of costs " 'regarding the remanded legal claims.' "  (*Rincon II*, *supra*, A139933, A140036.)  We concluded this development provided no basis to affirm the first award of fees and costs.  (*Ibid.*)  We stated:  "Because the trial court's recent resolution of the legal claims in defendants' favor is still subject to appellate review, we cannot at present make a final appellate determination that defendants are prevailing parties entitled to fees and costs.  If the summary judgment were reversed in a subsequent appeal, an award of prevailing-party fees based on the summary judgment also would be subject to appellate attack."  (*Ibid.*)

[3] In a footnote in their moving papers, defendants stated they had filed a memorandum of costs identifying costs recoverable by statute.  (Defendants did not specify whether they were referring to the 2013 memorandum of costs that was one of the bases for the first award of fees and costs (which had since been reversed), or to the November 2, 2017 memorandum of costs.) Defendants stated that, if plaintiffs sought to tax the costs in the memorandum of costs, those costs were "still recoverable under contract." Defendants stated:  "For these purposes, the Memorandum of Costs is incorporated herein."

Plaintiffs opposed the second fee motion. Plaintiffs argued in part that (1) defendants could not recover any fees or costs because of a nonrecourse provision in the loan documents and because of California's antideficiency legislation, and (2) certain categories of fees and costs requested by defendants were unreasonable or inappropriate. In addition, as to costs specifically, plaintiffs contended that (1) costs purportedly authorized by the parties' contracts but not by statute could not be recovered because they were not pleaded or proved at trial, and (2) costs that were authorized by statute could not be recovered because defendants did not include them in a timely memorandum of costs.

The trial court held a hearing on the fee motion on April 20, 2018. At the hearing, the parties presented extensive argument, and the court ruled on various issues, addressing whether certain categories of requested fees would be awarded. As to costs, the court disallowed defendants' entire request without prejudice. The court stated defendants could file another costs memorandum and that the court would then "figure . . . out" the costs issue.

In a written order filed on May 24, 2018, the trial court ruled defendants are the prevailing parties in the litigation and entitled to prevailing-party attorney fees pursuant to the contracts between the parties. The court rejected plaintiffs' argument that contractual and statutory provisions barred defendants from recovering attorney fees and costs. The court also ruled on various specific arguments made by the parties, disallowing certain categories of fees requested by defendants but rejecting many of plaintiffs' challenges to defendants' fee request, including "[p]laintiffs' contention that the fees [d]efendants incurred were not reasonable and justifiable." The court awarded defendants a total of

$9,235,712.93 in attorney fees.[4]  On costs, the court stated (consistent with its earlier oral ruling):  "Defendants' request for pre-May 2013 costs is denied without prejudice.  Defendants may file a Memorandum of Costs."

Plaintiffs appealed the May 24, 2018 fee award (No. A155104).

## G. *The Second Costs Order*

On May 3, 2018, after the court's oral ruling on costs at the April 20, 2018 hearing, defendants filed a memorandum of costs seeking $909,548.03 in costs.  This total included (1) $357,603.06 in statutory costs (i.e., costs awardable under Code of Civil Procedure section 1033.5, including filing and motion fees, deposition costs, service of process, and exhibits) (see Code Civ. Proc., § 1033.5, subd. (a)(1), (3), (4), (13)), and (2) $551,944.97 in costs that defendants stated were awardable under the Loan Agreement and the Cash Management Agreement (nonstatutory costs).

Plaintiffs filed a motion to strike or tax costs.  After receiving briefing, the court held a hearing on July 23, 2018.  On the same date, the court issued a written order granting in part and denying in part plaintiffs' motion.  The court rejected plaintiffs' argument that the May 3, 2018 costs memorandum was untimely and should be disallowed in its entirety.  The court, however, declined to award a significant portion of the costs requested by defendants.  The court ruled that costs not recoverable under Code of Civil Procedure section 1033.5 (which defendants argued were recoverable under the parties' contracts)—totaling more than $500,000—could not be recovered because

---

[4] Three of the categories of requested fees that the court *declined to award* were (1) fees incurred by defendants in connection with the trustee's sale of the Property, (2) fees incurred by defendants in seeking to recover fees, and (3) amounts billed by defendants' counsel but not paid by defendants (i.e., amounts written off by counsel).  These categories collectively totaled about $1.5 million.

7

they were not pleaded and proved at trial. The court made some smaller deductions to the requested categories of statutory costs and awarded a total of $332,704.30. Plaintiffs appealed the July 23, 2018 costs order (No. A155284).

Pursuant to the stipulation of the parties, we consolidated plaintiffs' appeals of the May 24, 2018 fee award and the July 23, 2018 costs order.

## II. **DISCUSSION**

### A. *Standard of Review*

As a general matter, we review an award of attorney fees for abuse of discretion. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) We review de novo the question whether there is a legal basis for a fee award. (*Ibid.*)

### B. *Defendants' Entitlement to Attorney Fees*

#### 1. **Contractual Basis for Fees**

Parties generally bear their own attorney fees unless a statute or agreement provides otherwise. (Code Civ. Proc., § 1021; *Aozora Bank, Ltd. v. 1333 North California Boulevard* (2004) 119 Cal.App.4th 1291, 1294 (*Aozora*).) Here, defendants argued, and the trial court agreed, that provisions of the parties' agreements authorize an award to defendants of the fees they incurred in defending against plaintiffs' lawsuit. In particular, section 10.13(a) of the Loan Agreement provides in part that plaintiffs (referred to in the agreement as the "Borrower") agree to pay "all reasonable, out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with . . . (vii) enforcing or preserving any rights, in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, this Agreement, the other Loan Documents, the Property, or any other security given for the Loan; and (viii) enforcing any

8

obligations of or collecting any payments due from Borrower under this Agreement . . . ."

Plaintiffs do not dispute that this contractual language authorizes defendants to seek attorney fees. Plaintiffs contend, however, that, under applicable contractual and statutory provisions (specifically, section 9.3 of the Loan Agreement, and Code of Civil Procedure section 580d), defendants may only obtain fees by proceeding against the collateral for the Loan (i.e., the Property and related assets), all of which was taken in the 2010 foreclosure, and that defendants may not seek a judgment or award of fees payable by plaintiffs. Plaintiffs argue the trial court erred by entering such an award.

For the reasons discussed below, we disagree. Although both section 9.3 of the Loan Agreement (which plaintiffs call the nonrecourse provision) and section 580d of the Code of Civil Procedure (a provision of California's antideficiency legislation) place limitations on the ability of defendants to seek a money judgment against plaintiffs, we conclude they do not bar an award of attorney fees incurred by defendants in successfully defending against plaintiffs' lawsuit.

## 2. Section 9.3 of the Loan Agreement

Plaintiffs argue section 9.3 of the Loan Agreement (section 9.3) "establish[es] that Rincon would not be *subject to any money judgment* for obligations contained in the Loan Documents." (Italics added.) But section 9.3 does not confer on the borrower a categorical immunity of the type plaintiffs describe. Instead, it defines and limits the remedies available to the lender. Specifically, as we discuss further below, section 9.3 provides that "Lender shall not enforce" any contractual obligation or liability "*by any action or proceeding* wherein a money judgment shall be sought against Borrower." (Italics added.) We conclude the trial court's award to the lender

9

of the attorney fees it incurred in *defending* against an action *brought by the borrower* does not run afoul of this provision.

Section 9.3 states in part: "Notwithstanding anything to the contrary contained in the Loan Documents and subject to the qualifications below, Lender *shall not enforce* the liability and obligation of Borrower to perform and observe the obligations contained in the Note, this Agreement, the Mortgage or the other Loan Documents *by any action or proceeding wherein a money judgment shall be sought against Borrower*, except that Lender *may bring a foreclosure action, an action for specific performance or any other appropriate action or proceeding* to enable Lender to enforce and realize upon its interest under the Note, this Agreement, the Mortgage and the other Loan Documents, or in the Property, the Rents, or any other collateral given to Lender pursuant to the Loan Documents; provided, however, that, except as specifically provided herein, *any judgment in any such action or proceeding* shall be enforceable against Borrower only to the extent of Borrower's interest in the Property, in the Rents and in any other collateral given to Lender, and Lender, by accepting the Note, this Agreement, the Mortgage and the other Loan Documents, *agrees that it shall not sue for, seek or demand any deficiency judgment against Borrower in any such action or proceeding* under or by reason of or under or in connection with the Note, this Agreement, the Mortgage or the other Loan Documents." (Italics added.) Section 9.3 then lists a number of additional exceptions and qualifications that are not relevant to the issues we must resolve in this appeal.

As we read it, the quoted portion of section 9.3 includes three components: (1) a rule that the lender may not "enforce" the borrower's contractual obligations or liabilities "by any action or proceeding wherein a money judgment shall be sought against" the borrower, (2) an exception

10

permitting the lender to "bring" certain types of "action[s] or proceeding[s]," and (3) a directive that, in a permitted "action or proceeding," the judgment will be enforceable only against the collateral and no "deficiency judgment" will be entered. We conclude section 9.3 does not apply here, because defendants did not seek to "enforce" plaintiffs' contractual obligations "by any action or proceeding" seeking entry of a money judgment against plaintiffs.

First, defendants did not seek to "enforce" plaintiffs' obligations "by any action." In *Mountain Air*, our Supreme Court addressed the meaning of the terms "action" and "proceeding" in a contract provision. (*Mountain Air*, *supra*, 3 Cal.5th at pp. 752–756.) The court explained that "an 'action' is synonymous with a lawsuit (see Code Civ. Proc., § 22)." (*Id.* at p. 753.) Defendants did not bring a lawsuit against plaintiffs, and they filed no counterclaim in plaintiffs' lawsuit. They just filed a motion to recover attorney fees they incurred in successfully defending against the action brought by plaintiffs.

In their opening brief in this appeal, plaintiffs do not contend defendants' motion for attorney fees was an "action" (focusing instead on arguing the motion was a "proceeding," an argument we address below). In their reply brief, however, plaintiffs make a broader claim, suggesting section 9.3 bars an effort by defendants to recover fees in the course of any action, and stating that: "It does not matter who 'brought' the litigation."

Even assuming this argument has been properly presented, we reject it. Section 9.3 does not prohibit defendants from seeking to protect their interests "in" an action filed by someone else; instead, the provision limits defendants' ability to "enforce" contractual obligations "*by* any action or proceeding." (Italics added.) In our view, the most logical reading of this language is that defendants, as a general rule, may not use the mechanism of

11

an "action" or a "proceeding" to "enforce" contractual obligations, i.e., they may not *bring* an "action" or "proceeding" to enforce those obligations.

We find additional support for this view in the second portion of section 9.3, which states the exception to the general rule. That clause states defendants "may *bring* a foreclosure action, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon its interest . . . ." (Italics added.) This exception allowing defendants to "bring" certain types of actions or proceedings supports the conclusion that the general rule (that defendants may not "enforce" contractual obligations "by any action or proceeding") is a limitation on defendants' ability to bring (or initiate) an action or proceeding. Defendants did not bring an action here.

We also reject plaintiffs' contention that defendants' fee motion is a "proceeding" within the meaning of section 9.3. As the Supreme Court explained in *Mountain Air*, "[t]he word 'proceeding' can take on 'different meanings in different contexts.' [Citation.] For example, 'proceeding' has been construed narrowly as 'an action or remedy before a court,' and, as broadly as ' "[a]ll the steps or measures adopted in the prosecution or defense of an action." ' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 754.) Plaintiffs argue defendants' motion for attorney fees falls within a broad definition of a "proceeding" as an individual step within an action.

We conclude, however, that the term "proceeding" in section 9.3 (as in the contract provision at issue in *Mountain Air*) "is used here in a narrower sense, similar to 'an action . . . before a court.' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 754.) In section 9.3, the general statement limiting the lender's remedies (i.e., the lender may not "enforce" contractual obligations "by any action or proceeding wherein a money judgment shall be sought

12

against Borrower") is followed by an exception listing remedies the lender *may* pursue—"Lender may bring a foreclosure action, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon its interest . . . ." The specific examples in that list of permitted remedies—"a foreclosure action" and "an action for specific performance"—"both refer to the entirety of a case and not individual procedural steps within a case" (*ibid.*). In our view, "[t]his suggests that 'proceeding' "—as used both in section 9.3's general rule and in its exception—"is likewise used in a limited sense." (*Ibid.* ["word's meaning 'takes color from the other words listed in the same provision' "].)

We do not agree with plaintiffs' argument that construing the term "proceeding" in this manner renders it superfluous. Instead, although we conclude the term "proceeding" in section 9.3 means an *entire case*, the phrase "any action or proceeding wherein a money judgment shall be sought against Borrower" appears designed to encompass any *type* of case the lender might bring that seeks a money judgment, giving the provision at least a potentially broader scope than if it referred simply to an "action" seeking a money judgment. Similarly, the exception permitting the lender to bring "a foreclosure action, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon its interest . . ." appears designed to encompass any type of case that enables the lender to do so.

Plaintiffs contend other language from section 9.3 supports their argument that the term "proceeding" in that provision should be construed broadly to encompass an individual step within an action. Plaintiffs state: "Further context comes from the next sentence of Section 9.3, where the Lender promises not to 'sue for, seek, or demand' assets beyond the collateral.

13

If the only concern were actions brought by the Lender, 'seek[] or demand' in addition to 'sue for' would be meaningless."

We are not persuaded. As discussed above, the language selectively quoted by plaintiffs—appearing in the same sentence as (1) the rule prohibiting the lender from seeking a money judgment "by any action or proceeding" and (2) the exception permitting certain types of actions or proceedings—is part of a directive that, *in* a permitted "action or proceeding," the judgment will be enforceable only against the collateral and no "deficiency judgment" will be entered. That third and final portion of the sentence states in relevant part that the lender "agrees that it shall not sue for, seek or demand any deficiency judgment against Borrower *in any such action or proceeding*." (Italics added.) The lender's agreement not to take certain steps "in" a permitted action or proceeding does not suggest the term "proceeding" should itself be construed to mean such an individual step within an action. To the contrary, the lender's agreement not to "seek or demand" a deficiency judgment "in" an "action or proceeding" bolsters our conclusion that the term "proceeding," like the term "action," means an entire case, not an individual step within a case.

For the foregoing reasons, the award of fees incurred by the lender to defend against the borrower's lawsuit does not violate section 9.3's rule that the lender may not "enforce" contractual obligations "by any action or proceeding" seeking a money judgment. Plaintiffs suggest section 9.3 also prohibits efforts by the lender to seek a "deficiency judgment" against the borrower. But as discussed above, section 9.3's reference to the lender's seeking a "deficiency judgment" limits the steps the lender may take "in" an "action or proceeding" that is permitted by the exception in section 9.3. Because the lender did not bring an "action or proceeding" here (the general

14

rule in section 9.3), no issue is presented as to whether the purported "action or proceeding" was of a permitted type (falling within the exception), or as to whether defendants took any prohibited step in such a permitted action or proceeding, such as "seek[ing] or demand[ing]" a "deficiency judgment" (the proviso limiting the exception).[5]  The fee award does not violate section 9.3.

This court's 2004 decision in *Aozora, supra,* 119 Cal.App.4th 1291, cited by plaintiffs, does not support a contrary result on this record.  In *Aozora,* the loan documents included "nonrecourse" provisions specifying that, with certain exceptions, the lender could not seek a money judgment against the borrower " 'either by means of *a suit* on [this/the] Note or by means of *a suit* for deficiency judgment following foreclosure of [the/this] Deed of Trust.' " (*Aozora, supra,* at p. 1295 (italics added).)  The lender there *filed suit* against the borrower (thus triggering the nonrecourse provisions) and recovered damages for waste and related attorney fees.  (*Id.* at pp. 1293–1294.)  The trial court concluded an exception to the nonrecourse provision permitting personal liability for waste encompassed both waste damages and attorney fees incurred in prosecuting the waste action.  (*Id.* at p. 1295.)

On appeal in *Aozora,* we held the general attorney fee provisions in the loan documents did not make the borrower personally liable for fees "unless such liability was excepted from the nonrecourse feature of the" loan documents.  (*Aozora, supra,* 119 Cal.App.4th at p. 1295.)  We then concluded that the "carve-out" to the nonrecourse provisions permitting recovery for waste, which did not expressly refer to attorney fees, did not authorize imposition on the borrower of personal liability for fees incurred in prosecuting the waste action.  (*Id.* at pp. 1295–1297.)  We noted this

---

[5] We address in part II.B.3., *post*, plaintiffs' contention that the fee award violates California's antideficiency legislation.

interpretation did not nullify the general attorney fee provisions in the loan documents, because the lender could seek to recover fees from the collateral that secured the loan. (*Id.* at p. 1297.) And in a passage now quoted by plaintiffs here, we stated: "If [the lender] wanted additional recourse against the [borrower] personally it should have negotiated for an attorney fee carve-out in the loan documents." (*Id.* at p. 1297.)

The difference between *Aozora* and this case is that, in *Aozora*, the nonrecourse provisions applied (and their applicability does not appear to have been disputed in the trial court or on appeal). Those provisions limited the lender's ability to seek a money judgment against the borrower " 'by means of a suit,' " and the lender there filed a suit. (*Aozora*, *supra*, 119 Cal.App.4th at pp. 1293, 1295.) The focus therefore was on whether a carve-out to the nonrecourse provisions applied. (*Id.* at pp. 1295–1297.) *Aozora* did not hold or suggest that fees incurred by a lender in defending against a suit *filed by the borrower* would have been barred by the nonrecourse provisions at issue there.

In contrast, here, as discussed above, the nonrecourse provision (section 9.3), limiting the lender's ability to "enforce" contractual obligations "by any action or proceeding," does not apply. It does not prohibit an award of fees incurred by the lender in defending against the borrower's lawsuit. Because section 9.3 does not apply, plaintiffs are incorrect in suggesting a carve-out from that provision is necessary to support liability, and *Aozora*'s analysis of the carve-outs in that case is irrelevant.[6]

---

[6] For this reason, we need not consider the parties' arguments as to the applicability of certain exceptions or carve-outs listed in section 9.3.

16

### 3. Antideficiency Legislation

In addition to relying on section 9.3 of the Loan Agreement, plaintiffs contend Code of Civil Procedure section 580d (section 580d), a provision of California's antideficiency legislation, bars the fee award here. We disagree.

Section 580d, subdivision (a), states in relevant part: "[N]o deficiency shall be owed or collected, and no deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust or mortgage on real property or an estate for years therein executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust." " ' "A 'deficiency judgment' is a personal judgment against a debtor for a recovery of the secured debt measured by the difference between the debt and the net proceeds received from the foreclosure sale." ' " (*Thoryk v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 386, 398 (*Thoryk*).)

Plaintiffs argue that the terms of the loan documents establish that any attorney fee obligation is part of the debt secured by the collateral. Plaintiffs focus on the definition of "Debt" in the Loan Agreement, which states it includes the principal amount of the Loan, any accrued interest, and "all other sums . . . due to Lender in respect of the Loan under the Note, this Agreement, the Mortgage or any other Loan Document." Plaintiffs state these "sums" include any attorney fees owed to the lender pursuant to the attorney fee provision in the Loan Agreement, section 10.13.

Building from this premise, plaintiffs contend that, under section 580d, such secured amounts may only be recovered *from the collateral*, and that an award of fees *payable by plaintiffs* is a prohibited deficiency judgment. Plaintiffs claim this is so even though the fees were incurred by defendants in defending against litigation brought by plaintiffs, litigation that extended for years after the 2010 foreclosure sale of the Property. We are not persuaded

17

section 580d prohibits an award of defensively incurred attorney fees in these circumstances.

California appellate courts have rejected similar arguments and have held that an award of prevailing-party attorney fees to a lender in an action brought by the borrower is not a "deficiency judgment" prohibited by section 580d.  (*Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 547–548 (*Jones*); *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1509 (*Passanisi*).)  In *Passanisi*, the court explained: "The purpose of section 580d is to put judicial foreclosure on parity with private foreclosure.  [Citation.]  When a creditor judicially forecloses, the debtor retains the right to redeem the property and this right has the effect of insuring that the security will satisfy a realistic share of the debt.  [Citation.]  In a nonjudicial foreclosure there is no right to redeem, but the proscription against a deficiency judgment has a comparable effect of making the security satisfy a realistic share of the debt.  [Citation.]  Thus, the creditor may elect a nonjudicial foreclosure, in which case the sale transfers nonredeemable title but no deficiency judgment may be sought, or he may proceed with a judicial sale in which he can obtain a deficiency judgment but title is redeemable." (*Passanisi*, *supra*, 190 Cal.App.3d at pp. 1507–1508.)

As later described in *Jones*, the borrower in *Passanisi* "brought an action to enjoin foreclosure of a deed of trust.  The borrower lost the action and the court awarded the lender attorney fees pursuant to a clause in the note.  The borrower claimed the lender's effort to collect the award of fees after a nonjudicial foreclosure was barred by section 580d.  In rejecting the borrower's argument, the court stated:  'In considering the purposes of section 580d, we conclude that when a creditor-beneficiary prevails in an action brought by the debtor-trustor to restrain foreclosure of the security

18

and is awarded attorney's fees and costs, the subsequent sale of the property at a trustee's sale does not render the judgment for attorney's fees and costs unenforceable. Section 580d does not by its express terms apply in such a case, nor does the policy behind section 580d dictate such a result. Enforcement of the judgment for attorney's fees and costs is not simply a subterfuge for the collection of a deficiency on the secured note. The award for attorney's fees and costs is neither measured by, nor interrelated to, a deficiency on the note. Such an award is not attributable to a general condition of the real estate market, but is the result of the debtor-trustor's voluntary act in bringing an unmeritorious suit which the creditor-beneficiary was required to make expenditures to defend. The judgment for attorney's fees and costs is entirely independent of the problems encompassed by antideficiency legislation and the enforcement of such a judgment will not affect the parity of remedies such legislation is intended to foster. [Citation.] For these reasons we reject plaintiffs' argument that the judgment for attorney's fees and costs must be deemed unenforceable by virtue of section 580d. [Fn. omitted.]' (*Passanisi, supra*, at p. 1509.)" (*Jones, supra,* 127 Cal.App.4th at pp. 546–547.)

The court in *Jones* applied the same reasoning in declining to overturn an award of fees to the lender in a case where the borrowers sought to set aside a foreclosure sale, rather than enjoin it. (*Jones, supra*, 127 Cal.App.4th at pp. 547–548.) After noting this distinction, the *Jones* court stated: "If anything, this case presents an even more compelling reason to uphold an award of fees. Where, as here, fees are awarded in an action that was not even contemplated prior to foreclosure, it makes no sense to say that the fees are part of the indebtedness satisfied at the foreclosure sale." (*Id.* at p. 547.)

We find the reasoning of *Passanisi* and *Jones* persuasive, and we adopt it here. Section 580d does not preclude an award of fees incurred by defendants in defending against plaintiffs' lawsuit, a case that began shortly before the 2010 foreclosure sale but has now extended for more than a decade after the sale was completed. In particular, as in *Jones*, the notion that defendants here had the opportunity in 2010 to recoup the very significant fees they later incurred in a 2012 trial and extensive related litigation is not persuasive.

Plaintiffs argue *Passanisi* and *Jones* are distinguishable because the attorney fees awarded there were *not* part of the debt secured by the real property, in contrast to the treatment of attorney fees in the loan documents at issue in this case. We reject this reading of *Passanisi* and *Jones*. Neither case stated that the result it reached—permitting an award to a lender of defensively incurred attorney fees—hinged on whether there was contractual language addressing whether attorney fees were part of the secured debt. Instead, as noted above, *Passanisi* stated categorically (and *Jones* agreed) that an award of fees in this situation does not violate section 580d. (*Passanisi, supra*, 190 Cal.App.3d at p. 1509; *Jones, supra*, 127 Cal.App.4th at pp. 546–548.)

As part of its explanation for why a fee award in this circumstance does not conflict with the purposes of section 580d, the *Passanisi* court stated: "The award for attorney's fees and costs is neither measured by, nor interrelated to, a deficiency on the note." (*Passanisi, supra*, 190 Cal.App.3d at p. 1509; accord, *Jones, supra*, 127 Cal.App.4th at p. 547 (quoting *Passanisi*).) Plaintiffs cite to this passage, suggesting it was a narrow statement that, in light of the contract provisions at issue in *Passanisi* and *Jones*, the fee award in each of those cases was not related to a deficiency on

the note. As we have explained, we disagree. As we read them, *Passanisi* and *Jones* announce a general rule that, in light of the purposes of section 580d, that statute does not prohibit an award of attorney fees incurred by a lender in successfully defending against a borrower's action to enjoin or set aside a foreclosure sale.

The cases cited by plaintiffs in support of their argument on this point—*Thoryk*, *supra*, 225 Cal.App.4th 386, and *Rettner v. Shepherd* (1991) 231 Cal.App.3d 943 (*Rettner*)—do not persuade us to depart from *Passanisi* and *Jones*. Neither *Thoryk* nor *Rettner* involved an award of prevailing-party attorney fees to a lender in a borrower's lawsuit to enjoin or set aside a foreclosure sale. In *Thoryk*, the borrower defaulted after his property was damaged by a wildfire. (*Thoryk*, *supra*, 225 Cal.App.4th at pp. 392, 394.) A junior lienholder foreclosed and held the property until the senior lienholder foreclosed. (*Id.* at pp. 392 & fn. 1, 394–395 & fn. 2.) The junior lienholder intervened in the borrower's separate tort action against third parties allegedly responsible for the fire, claiming a lien for the unpaid principal amount, and attorney fees, on any damage award the borrower recovered from the third parties. (*Id.* at pp. 392, 394–395.)

After the trial court in *Thoryk* granted the lien application, the appellate court reversed, concluding the deed of trust did not assign a security right in the borrower's tort claim against third parties. (*Thoryk*, *supra*, 225 Cal.App.4th at pp. 393–394, 396, 404–405.) Because there was no additional security, the lien imposed by the trial court amounted to a deficiency judgment against the borrower personally. (*Id.* at pp. 404–405, 408.) The appellate court stated: "[The junior lienholder] has not shown current entitlement to any continuing interest and attorney fees that would be recoverable and consistent with antideficiency protections." (*Id.* at p. 404.)

21

*Thoryk* does not persuade us the trial court erred by awarding prevailing-party attorney fees to defendants here. As noted, *Thoryk* involved a lender suing a borrower (via a complaint in intervention) to recover sums beyond the security granted by the deed of trust. It did not involve an award to a lender of prevailing-party fees incurred in defending against a borrower's suit to enjoin or set aside a foreclosure sale. Nor did *Thoryk* suggest that *Passanisi* and *Jones*—cases that expressly addressed the situation here— were incorrectly decided. *Thoryk* did cite *Passanisi* and noted that, in that case, there was a surplus after the foreclosure sale. (*Thoryk*, *supra*, 225 Cal.App.4th at pp. 403–404, 408.) As a result, in *Passanisi*, "[t]here were mutual debts, allowing offsets. 'The creditor owed the debtors the surplus from the foreclosure sale. The debtors were liable to the creditor on the judgment for attorney's fees and costs.' " (*Thoryk*, *supra*, at p. 403.) But as we read *Passanisi*, the existence of the surplus there was not a prerequisite to the validity of the award of fees to the lender. The *Passanisi* court stated only that the surplus from the foreclosure sale was sufficient to satisfy *in part* the attorney fee judgment owed by the borrower; the borrower still owed the remaining portion of the fee award to the lender. (*Passanisi*, *supra*, 190 Cal.App.3d at pp. 1511–1512.) We reject plaintiffs' argument that *Passanisi* and *Jones* do not apply here.

*Rettner* also does not assist plaintiffs. In *Rettner*, a creditor initially obtained an unsecured judgment, but it became a secured obligation when he accepted a note and deed of trust on real property in satisfaction of the judgment. (*Rettner*, *supra*, 231 Cal.App.3d at pp. 945–946, 950.) The Court of Appeal held that, as a result, the antideficiency statutes applied, and the creditor, after nonjudicially foreclosing on the property, could not obtain a deficiency judgment against the debtors. (*Id.* at pp. 947, 949–950.) The

creditor, relying on *Passanisi*, argued the antideficiency statutes did not apply because there were "separate and distinct obligations"—the note and deed of trust, and the original judgment. (*Id.* at p. 953.) The appellate court in *Rettner* disagreed, explaining how the scenario before it differed from the one at issue in *Passanisi*. (*Id.* at pp. 953–954.)

The *Rettner* court noted that *Passanisi* rejected a debtor's argument that the "one form of action rule" barred the award of attorney fees to a creditor who successfully resisted the debtor's action to enjoin a foreclosure sale. (*Rettner, supra*, 231 Cal.App.3d at p. 953.) *Rettner* stated: "The [*Passanisi*] court rejected [the debtor's] argument, noting that the rule applies only when a creditor brings the action (there, debtor brought it) and only when the action is ' "for the recovery of any debt or the enforcement of any right secured by [the deed of trust] upon real property" ' (there, the action was to enjoin the exercise of the power of sale in the deed of trust). In other words, in *Passanisi*, the obligation to pay attorney's fees for bringing an unmeritorious lawsuit was separate and distinct from the obligation the debtor owed with respect to his secured promissory note. Here, in contrast, there is no separate obligation: Rettner brought his motion to establish the amount by which the proceeds from the trustee's sale on the real property failed to satisfy the debt secured by a deed of trust on that property. Therefore, unlike *Passanisi*, this is a case in which the antideficiency statutes do apply." (*Rettner, supra*, at pp. 953–954.)

The present case, of course, involves *the same* scenario as *Passanisi* (and *Jones*)—the borrower here sued the lender to enjoin (and then to set aside) a foreclosure sale; the lender prevailed in that action and was awarded fees. *Rettner* does not suggest that such a fee award violates the antideficiency statutes, or that the result in *Passanisi* hinged on particular

23

contractual language addressing whether attorney fees were part of the secured debt. *Rettner*, like the other cases discussed above, does not support plaintiffs' argument that the language of the loan documents here (in particular, the definition of "Debt" in the Loan Agreement as including "all other sums" owed by the borrower) establishes that attorney fees incurred by the lender in defending (for years after the foreclosure) against the borrower's unmeritorious action had to be recovered, if at all, at the foreclosure sale. We conclude, consistent with *Passanisi* and *Jones*, that the fee award here does not violate section 580d or the policies underlying it.

## C. *Timeliness of CP III's Costs Memorandum*

Plaintiffs contend the memorandum of costs filed by defendants on May 3, 2018—which was the basis for the court's award of $332,704.30 in statutory costs—was untimely under rule 3.1700 of the California Rules of Court (rule 3.1700). We agree and will reverse the cost award.

In general, a prevailing party is entitled to recover statutory costs. (Code Civ. Proc., § 1032, subd. (b).) Rule 3.1700(a)(1) specifies that, to do so, a party "must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first." Absent a stipulation, the trial court may extend the deadline "for a period not to exceed 30 days." (Rule 3.1700(b)(3).) "The time provisions relating to the filing of a memorandum of costs, while not jurisdictional, are mandatory." (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 929.)

Notice of entry of the October 17, 2017 judgment—which gave judgment to defendants on all claims *and* stated defendants were entitled to costs—was served on October 20, 2017, triggering the 15-day deadline in

24

rule 3.1700. (Rule 3.1700(a)(1); see Code Civ. Proc., § 1032, subd. (a)(4) ["'[p]revailing party' includes . . . a defendant where neither plaintiff nor defendant obtains any relief"].) Defendants did not file the operative costs memorandum (claiming over $909,000) until several months later, on May 3, 2018.[7] Under rule 3.1700, the memorandum was untimely.[8]

Defendants suggest they could not file a memorandum claiming all their statutory costs within the 15-day period, because at that time (i.e., in early November 2017) plaintiffs' appeal of the trial court's first award of fees and costs was still pending in this court. To the extent defendants suggest the trial court might not have had jurisdiction to award costs at that time, any such concern did not prevent defendants from filing a protective memorandum claiming all their costs, to ensure they met the 15-day deadline

---

[7] As noted, defendants did file a memorandum of costs on November 2, 2017 (within 15 days after October 20), but it only listed a $560 filing fee (apparently for the 2017 summary judgment motion). It did not list any costs claimed to have been incurred prior to the initial judgment in 2013.

[8] Contrary to defendants' suggestion, the footnote in their second fee motion purporting to "incorporate[]" an earlier memorandum of costs (for certain purposes) did not satisfy rule 3.1700. First, the trial court expressly based its cost award on the May 3, 2018 costs memorandum and the items listed in it, and the timeliness of that memorandum is at issue here.

Second, defendants did not file the fee motion within 15 days after service of notice of entry of judgment as required by rule 3.1700 for a memorandum of costs. Instead, defendants filed the fee motion on December 19, 2017, i.e., *60 days* after service of notice of entry of judgment, a timeframe permitted for *attorney fee motions* under a different rule— California Rules of Court, rule 3.1702. (See Cal. Rules of Court, rule 3.1702(b)(1) [motion for attorney fees must be filed "within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case"]; *id.*, rule 8.104(a)(1)(A)–(B) [notice of appeal is timely when filed 60 days after service of notice of entry of judgment].) Defendants have cited no authority suggesting a party may avoid rule 3.1700's 15-day deadline for a costs memorandum by instead requesting statutory costs in a fee motion filed well after that deadline.

in rule 3.1700. If the trial court had ruled the memorandum was premature or that it lacked jurisdiction to award costs at that time, defendants might have had to wait a bit longer to recover costs, but they would have protected their rights.

Even if defendants were correct that the pending appeal of the first cost award stayed the filing deadline specified in rule 3.1700, such an extension would not be sufficient to render the May 3, 2018 costs memorandum timely. This court issued its opinion reversing the first award of fees and costs on November 28, 2017 (the *Rincon II* opinion), and the remittitur in that appeal issued on January 29, 2018. (*Rincon II*, *supra*, A139933, A140036.) Defendants did not file a costs memorandum within 15 days of that date.

Defendants argue, however, that they still could not file a costs memorandum in January or February 2018 because this court's *Rincon II* opinion required that, before doing so, they had to await an express determination by the trial court that they were indeed prevailing parties. The trial court appears to have accepted this view, concluding the May 3, 2018 costs memorandum was timely because it was filed within 15 days of the court's determination at the April 20, 2018 hearing on the attorney fees motion that defendants were prevailing parties.

We conclude the trial court erred on this point. (*Rincon III*, *supra*, 43 Cal.App.5th at pp. 997–998 [" 'Whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review' "].) In *Rincon II*, we concluded that, because we had reversed the 2013 judgment in part, it was no longer clear who the prevailing party would ultimately be, so the 2013 award of prevailing-party attorney fees and costs could not stand. (*Rincon II*, *supra*, A139933, A140036.) We stated: "The trial court must make a new prevailing-party determination based on the resolution of all

26

claims, including the remanded claims." (*Rincon II, supra*, A139933, A140036.) But we did not hold, state, or imply that, once the remanded claims were resolved, the normal procedures and deadlines for *seeking* fees and costs (such as filing a costs memorandum in the time prescribed by rule) would not apply. And we note that even when there is uncertainty as to which party is entitled to recover costs, the proper approach is to file a costs memorandum so the trial court can resolve the issue. (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co., supra*, 223 Cal.App.3d at pp. 928–929.)

In January 2018, the primary focus of attention understandably was the much larger amount then being claimed in attorney fees.[9] While the renewed cost memorandum should have been filed within 15 days of January 29, 2018, the failure to do so was subject to correction by a motion under Code of Civil Procedure section 473, subdivision (b), on the ground of "mistake, inadvertence, surprise, or excusable neglect." (See *Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 381 ["In the absence of prejudice, the trial court has broad discretion in allowing relief on grounds of inadvertence from a failure to timely file a cost bill"; relief upheld where, five days after deadline, party moved for relief on grounds of inadvertence].) We would be inclined to look favorably on such a motion. Defendants' intention to seek recovery of statutory costs in the amount they ultimately claimed was no

_____

[9] As noted, at the April 20, 2018 hearing, the court disallowed costs without prejudice and stated defendants could file a costs memorandum and the court would then "figure . . . out" the costs issue. The May 24, 2018 fee order, reflecting the court's rulings at the April 20 hearing, stated: "Defendants' request for pre-May 2013 costs is denied without prejudice. Defendants may file a Memorandum of Costs." The court ultimately addressed the timeliness of the May 3, 2018 costs memorandum in its July 23, 2018 costs order, in which it found the memorandum was timely filed.

surprise, a prior cost memorandum seeking a similar amount of statutory costs having been filed. But we are not disposed to grant such relief sua sponte. Since the court did not address the propriety of discretionary relief, we will not do so in this appeal. "Although an appellate court may affirm an order upon a theory of law other than that adopted by the trial court, it is not appropriate to do so by exercising a discretion and making factual decisions to which the trial court has never addressed itself. [Citation.] [¶] An application for relief from default is addressed in the first instance to the discretion of the trial court. The appellate function is to review that discretion, not replace it." (*Jonson v. Weinstein* (1967) 249 Cal.App.2d 954, 960 [reversing and remanding for further proceedings].)

We will reverse the trial court's order awarding $332,704.30 in statutory costs to defendants and remand for further proceedings. The trial court may consider in the first instance whether defendants have presented a proper and timely request for discretionary relief and, if so, whether such relief should be granted.

**D. *Reasonableness of the Fee Award***

Plaintiffs contend the trial court should have denied or further reduced the fees requested by defendants. Specifically, plaintiffs argue the court (1) should have excluded from its award two categories of "impermissible fees," and (2) failed to require defendants to prove the amount and reasonableness of their fees. We find no abuse of discretion in the court's resolution of these issues or in the amount of fees it awarded.

**1. Allegedly Impermissible Fees**

a. *Fees for Representation of Nonparties*

In their motion, defendants requested (1) fees for work done by Manatt, Phelps & Phillips (Manatt), the law firm that primarily represented defendants, (2) fees for work done by other law firms that represented

28

defendants on certain matters, such as service of subpoenas, and (3) fees for work done by other law firms that represented other entities, including the court-appointed receiver and third-party witnesses Bank of America and Eastdil Secured (Eastdil). In response to plaintiffs' objection, the trial court disallowed the third category of requested fees, i.e., fees for work done by other law firms representing nonparties to the litigation.

Plaintiffs also argued in their trial court opposition papers that some of the fees charged *by Manatt* (defendants' counsel) were for Manatt's representation of third-party witnesses, including the Federal Reserve Bank of New York, Eastdil, BlackRock Financial Management, Inc., and Bank of America. Plaintiffs stated the billing entries submitted by Manatt that "explicitly reference[d]" those third parties totaled $1,179,074, and asked the court to reduce Manatt's fees by that amount. After discussion of the issue at the April 20, 2018 fee hearing, the court declined to deduct this amount and ruled defendants could recover fees for their counsel's representation of the third parties.

Plaintiffs challenge this ruling on appeal, arguing the contracts between the parties do not support an award of fees for counsel's representation of entities that were not parties to the contracts or parties to the litigation. We conclude the court did not abuse its discretion in declining to make the deduction requested by plaintiffs.

Recognizing that Manatt's work on behalf of defendants involved coordination with the third parties on discovery and other matters, the court attempted to work with counsel at the hearing to determine which, if any, of the challenged billing entries should be excluded. The court initially stated it would allow fees for work performed by Manatt in connection with plaintiffs' discovery directed to the third-party witnesses and was not inclined to allow

29

fees for other work. After further discussion, the court stated it would also allow fees for such activities as Manatt's coordination with attorneys for the third parties about trial preparation. Since the $1,179,074 figure proffered by plaintiffs included these tasks, the court stated it needed a more specific breakdown to be able to determine whether some of the fees were inappropriate. To this end, the court directed counsel to meet and confer during a recess about the time entries in this category, as well as other issues.

Following the recess, defendants' counsel stated that, based on a review of 35 to 40 percent of the challenged entries, it appeared they "related to work done on behalf of our client interacting with either the principal or lawyers for the Federal Reserve Bank of New York, Eastdil Secured, Blackrock, in each and every instance these are amounts that we would have incurred regardless of whether we were representing them." Echoing arguments made in their briefing on the fee motion, defendants' counsel continued: "[B]ased on our review so far, every single entry is something that's appropriate as part of our defense of this litigation in defending preliminary injunction, discovery, summary judgment motions."

When the court asked plaintiffs' counsel if she wished to bring specific entries to the court's attention, counsel responded she had not had a chance during the hearing to review individual entries, but that plaintiffs would be willing to "strike a percentage," i.e., agree to a deduction of some of the $1,179,074 in challenged fees. Defense counsel responded that he believed defendants had met their burden by "submitting specific bills identifying the specific activities for which we're seeking recovery," and that no fees in this category should be deducted. The court ultimately made no deduction for this category.

The court's approach and decision were reasonable. The litigation involved extensive discovery and other proceedings relating to the third parties. (See *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (Jan. 31, 2017, A138463) [nonpub. portion of partially pub. opn.].) It is not surprising that Manatt's work on behalf of defendants involved some coordination with the third parties. And to the extent Manatt represented the third parties in connection with certain activities, that work might well have overlapped to some degree with Manatt's representation of defendants. The court was not obligated to grant plaintiffs' request to deduct $1,179,074, a total that apparently reflected all billing entries that even mentioned the third parties. And as outlined, the court made reasonable efforts to determine whether a smaller amount should be deducted. After reviewing the documents submitted by the parties, discussing the matter with counsel, and directing counsel to meet and confer, the court reasonably could conclude that no deduction was warranted.

   b. *Fees for Other Litigation*

Plaintiffs contend the court should have excluded $122,815.65 for time spent by defendants' attorneys on other litigation, including a tax assessment case that defendants lost and litigation in New York against the guarantor of the Loan.[10] When this issue arose in the trial court, defendants argued that the challenged fees were incurred in connection with the present litigation, stating as an example that "when we are dealing with the guarantee action in New York, we have to be describing what's going on here." The court

---

[10] Plaintiffs have filed a request that this court take judicial notice of certain documents relating to both the present litigation and the tax assessment case. We grant the unopposed request.

31

declined to reduce the requested fees for this category of arguably interrelated work. We do not think it abused its discretion in doing so.

### 2. Alleged Failure To Require Defendants To Prove the Amount and Reasonableness of Their Fees

Plaintiffs contend the court misapplied the burden of proof and failed to require defendants to prove the amount and reasonableness of their fees. The party seeking fees has the burden to prove the amount requested is reasonable. (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1184.) On appeal, the party challenging the fee award has the burden to show the trial court abused its discretion. (*Jones, supra*, 127 Cal.App.4th at p. 550.)

To the extent plaintiffs suggest the trial court erroneously held that defendants did not have the burden as the moving party to establish the amount and reasonableness of the requested fees, plaintiffs are incorrect. In its fee order, the court expressly placed this burden on defendants and concluded they had met their burden.

Plaintiffs argue, however, that various alleged deficiencies in defendants' fee request required the court to deny the request in its entirety or significantly reduce the amount awarded. Specifically, plaintiffs assert defendants' submission included (1) erroneous calculations, (2) invoices that were excessively redacted, (3) inaccurate declarations, (4) an improper request for fees related to work with Judicial Arbitration and Mediation Services (JAMS), and (5) fees that are excessive due to defendants' unreasonable and overly aggressive approach to the litigation. Plaintiffs have not shown the court abused its discretion.

The record shows the court carefully considered the materials and arguments presented by the parties. In support of their fee request, defendants submitted, among other things, an extensive set of invoices and

billing entries (spanning several volumes of the appellate record). In turn, plaintiffs proffered detailed written submissions, including schedules collecting the time entries they were challenging. At the April 20, 2018 hearing on the fee motion, the court noted it had spent a significant amount of time reviewing the documents submitted by the parties. During the hearing, the court heard wide-ranging argument, held colloquies with counsel, and made oral rulings on various issues.

Following the hearing, the court issued a written order (prepared by defense counsel at the court's request) addressing the parties' arguments, excluding certain categories of requested fees totaling more than $1.5 million, and denying without prejudice defendants' request for pre-May 2013 costs. Finally, the court received additional briefing specifically directed to out-of-pocket costs (i.e., plaintiffs' motion to strike or tax costs and related briefing), held a further hearing devoted to costs, and issued a second written order awarding defendants less than half of the costs they sought. The record does not support plaintiffs' suggestion that the court "rubber-stamped" any portion of the defendants' fee request or issued an "arbitrar[y]" award.

Plaintiffs' specific appellate challenges also do not persuade us the court abused its discretion. The court reasonably could conclude that the detailed billing records submitted by defendants adequately demonstrated the amount and reasonableness of the fees they sought, and that disputed calculations on certain points or redactions in some invoices did not undermine that showing. Nor was the court obligated to accept plaintiffs' view that defendants' conduct of the litigation established the fee request was unreasonable. As to amounts that defense counsel did not collect from their clients but included in the fee request, the court disallowed these amounts. The court was not required to conclude (as plaintiffs suggest it should have

33

done) that defendants' statements about this issue called into question the validity of the whole fee request.

Finally, plaintiffs argue that, based on conflict-of-interest principles, the trial court should have excluded fees relating to defendants' work with JAMS. Early in the litigation, the parties stipulated to the appointment of a discovery referee from JAMS. At some point prior to the 2012 trial, defendants began working with a different JAMS representative from the same office as a trial consultant. Plaintiffs state they learned of this second arrangement years later, in 2017, when reviewing the billing entries provided by defendants in support of their second fee motion.

In their opposition to the fee motion, plaintiffs argued defendants should not recover various JAMS-related fees, including fees for work with the JAMS consultant and fees for work on discovery issues after defendants retained the consultant. Plaintiffs also filed a motion to disqualify the discovery referee.

At the April 20, 2018 hearing, the court denied the disqualification motion (although, based on the parties' stipulation, the court ordered that the JAMS representative who had acted as the discovery referee would not continue in that capacity). In its fee order, the court rejected plaintiffs' argument that defendants were not entitled to fees incurred in working with the consultant from JAMS. We conclude plaintiffs have not shown the court abused its discretion on this point. Having concluded there was not a conflict requiring the discovery referee's disqualification (a ruling that is not before us in the present appeal), the court was not obligated to conclude the various categories of JAMS-related fees identified by plaintiffs were "tainted" by the alleged conflict.

## III. DISPOSITION

In No. A155104:

The trial court's May 24, 2018 order granting defendants' motion to fix the amount of awardable attorney fees and costs, and awarding defendants $9,235,712.93 in attorney fees, is affirmed.

In No. A155284:

The trial court's July 23, 2018 order denying in part and granting in part plaintiffs' motion to strike and tax costs, and awarding defendants $332,704.30 in statutory costs, is reversed. That matter is remanded for the trial court to consider whether defendants have presented a proper and timely request for discretionary relief from their failure to file a timely costs memorandum and, if so, whether such relief should be granted. If the court grants relief, it shall reinstate the order awarding defendants $332,704.30 in statutory costs. If the court denies relief, it shall enter a new order granting plaintiffs' motion to strike and tax costs, and declining to award costs (other than the $560 filing fee that was included in defendants' November 2, 2017 costs memorandum).

The parties shall bear their own costs in these consolidated appeals.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

35

POLLAK, P. J., Concurring.

I agree with the disposition and reasoning ably explained in the lead opinion. With respect to the cost issue, I would add that in my opinion the defendants could reasonably, if mistakenly, infer from this court's prior directive that the trial court designate the prevailing party that the filing of a renewed cost memorandum should await that determination. Fortunately that misunderstanding was, and still is, correctible by a motion under Code of Civil Procedure section 473, subdivision (b).

POLLAK, P. J.